UNITED STATES, Appellee

v

JOHN H. MALLICOTE, II, Second Lieutenant,
U. S. Air Force, Appellant

13 USCMA 374, 32 CMR 374

No. 15,958

December 14, 1962

*Major William A. Crawford, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker, Lieutenant Colonel Emanuel Lewis,* and *Lieutenant Colonel Simpson M. Woolf.*

KILDAY, Judge:

The appellant was found guilty by a general court-martial convened at Custer Air Force Station, Michigan, of larceny of $185.20 and five specifications of forgery, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. He was sentenced to dismissal, forfeiture of all pay and allowances, and confinement at hard labor for three years. The convening authority approved the findings of guilty and the dismissal but reduced the period of confinement to two years and deferred application of the forfeiture. An Air Force board of review affirmed the approved findings and sentence without modification.

Although several allegations of error were presented, this Court granted appellant's petition for review on the sole issue of whether:

"LIEUTENANT COLONEL CARL C. BURGET WAS DISQUALIFIED TO REVIEW THE RECORD OF TRIAL SINCE HE HAD PREVIOUSLY ACTED AS A MEMBER OF THE PROSECUTION."

A brief recitation of the facts is necessary for a proper understanding of the matter before us.

The appellant, a member of the reserve corps, was ordered to active duty in April 1960. On May 1st he was assigned to the position of Secretary of the Officers' Open Mess at Custer Air Force Station. His duties as secretary included the employment and discharge of employees and preparation of the payroll pertinent thereto. In preparing the payroll for the period ending October 31, 1960, appellant added the name of John Straub, a former employee of the mess who had been transferred prior thereto and who was not employed during the period to which the payroll pertained. A check prepared in the amount of $35.80, payable to Straub, was signed by the appellant. He thereafter endorsed the check with the name "John Straub," cashed it from the check cashing account maintained by him at the mess, and retained the money for his own use. Appellant then submitted the check to the Industrial State Bank, Augusta, Michigan, for credit to the account of the Officers' Open Mess, Custer Air Force Station, Battle Creek, Michigan. Appellant repeated this identical procedure in the four subsequent semi-monthly payroll periods, November 15th through December 31, 1960, the only difference being in the amounts of the purported payments, which ranged from $30.00 to $41.90. The total monies obtained by the appellant by this procedure was $185.20, the basis for the charge of larceny.

The appellant's activities came to light when he was transferred from his position as secretary early in January 1961 and his successor, who was acquainted with the aforementioned John Straub and knew of the latter's transfer from the base, discovered one of the fraudulent checks in a routine review of the records of the mess and so informed the appellant on February 14th.

On February 20th the appellant, in a signed statement given to a representative of the Office of Special Investigations, admitted submitting false payrolls in the manner set forth above and thereafter converting the monies so obtained to his own use. However, he attempted to justify his action on the ground that he was required to put in a considerable amount of additional time in order to properly fulfill his responsibilities, and to do some of the work of his assistant who was daily diverted from his job to duties in the squadron orderly room. He completed his recital of events by stating "I firmly believe I was entitled to at least as much as I received in this manner for the many extra hours which I put in."

Charges were preferred against the appellant on March 24, 1961. On June 23d, pursuant to Article 34, Uniform Code of Military Justice, 10 USC § 834,[1]

---

[1] "Before directing the trial of any charge by general court-martial, the convening authority shall refer it to his

Lieutenant Colonel Carl E. Burget, Acting Staff Judge Advocate, 30th Air Division (SAGE), Truax Field, Wisconsin, prepared the "advice" for the convening authority in which he reviewed the charges and specifications, the report of pretrial investigation and the allied papers, and concurred in the recommendations of the investigating officer and the commanders of the Air Base Squadron and Air Defense Sector, Custer Air Force Station, that Mallicote be tried by general court-martial.

Thereafter, on July 3d, Colonel Burget, still Acting Staff Judge Advocate, forwarded a ten-page "Advice to Trial Counsel" in which he instructed the prosecutor as to the preparation and presentation of the case for the Government. The closing paragraph directed that a copy of the letter was to be served on the accused, together with the charges and allied papers.

Subsequent to Mallicote's conviction, Burget, as assistant staff judge advocate, reviewed the record of trial and prepared the recommendations and advice to the convening authority in accordance with the provisions of Article 61, Uniform Code of Military Justice, 10 USC § 861.[2] While the same was expressly adopted and concurred in by the staff judge advocate, the memorandum admittedly was authored by his assistant.[3]

Appellate defense counsel contend that the aforementioned "Advice to Trial Counsel" was so complete as to constitute "an outline of trial strategy which sought to describe in detail the trial tactics most conducive to securing a conviction. . . . that Lieutenant Colonel Burget, and not Captain Kozlowski [trial counsel], was the master strategist, who devised to the most minute detail the prosecution's plan of attack, and that the latter was in actuality but the in-court alter ego of the former." By so doing, Colonel Burget "became a *de facto* member of the prosecution" and thereby disqualified from subsequently acting as staff judge advocate or legal officer as proscribed by Article 6(c), Uniform Code of Military Justice, 10 USC § 806, which provides:

"No person who has acted as member, law officer, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case."

If, as alleged by appellate defense counsel, Burget "acted as a member of the prosecution," he is ▮▮▮▮ barred from subsequently advising the reviewing authority in this case. For although the staff judge advocate or his assistant are not, by reason of their office and ordinary pretrial activities, barred by Article 6(c) from subsequently advising the reviewing authority, the implication and reason why he must be when he acts—directly or indirectly—as trial counsel, are clear. As we stated in United States v Coulter, 3 USCMA 657, 14 CMR 75, "The obvious purpose of the lawmakers in prohibiting trial counsel from subsequently acting as the Staff Judge Advocate on the review of the same case was to assure the accused

---

staff judge advocate or legal officer for consideration and advice. The convening authority may not refer a charge to a general court-martial for trial unless he has found that the charge alleges an offense under this chapter and is warranted by evidence indicated in the report of investigation."

[2] "The convening authority shall refer the record of each general court-martial to his staff judge advocate or legal officer, who shall submit his written opinion thereon to the convening authority."

[3] Manifestly it is of no legal significance to the issue before us that the staff judge advocate adopted and concurred in Colonel Burget's post-trial review. If the latter's activities disqualified him, the staff judge advocate—even though himself without previous connection with the case—cannot, by ratifying the post-trial recommendations, provide the impartiality directed by the statute. United States v Hightower, 5 USCMA 385, 18 CMR 9; United States v Crunk, 4 USCMA 290, 15 CMR 290.

a thoroughly fair and impartial review." The right to an impartial review is an important right which must be recognized in the military judicial system and an accused is entitled to have the record reviewed and the limits of his sentence fixed by a commander who is free from any connection with the controversy. United States v Gordon, 1 USCMA 255, 2 CMR 161. So, too, the subordinate advising such reviewing authority must occupy a similarly uncolored vantage point from which to assess the pertinent facts and circumstances.

In United States v Hightower, 5 USCMA 385, 18 CMR 9, we had occasion to compare Article 6(c), supra, with Article 27(a) of the Code, 10 USC § 827.[4] Therein we stated that: "Each of these articles of the Uniform Code prohibits persons who act in one capacity 'in any case' from thereafter performing duties in an inconsistent capacity 'in the same case.' The plain purpose of these provisions is to preclude situations which impair or destroy the fairness and impartiality of the proceedings against the accused." See also United States v Albright, 9 USCMA 628, 26 CMR 408.

That conclusion is in full accord with the following comment in the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at page 138; "[a]lthough not mentioned in Article 6c, it follows that any person who has acted in a partisan capacity . . . should not act subsequently as the staff judge advocate or legal officer in the same case."

The staff judge advocate is peculiarly vulnerable in such a potential conflict of interest. Because of his position as administrator of military justice and discipline and as legal advisor to the command to which he is attached, his services are available to all. He must act in an independent and impartial capacity and does not represent only the Government. In the preliminary investigating stage, he is an impartial advisor to both the Government and the accused. United States v DeAngelis, 3 USCMA 298, 12 CMR 54; United States v Gunnels, 8 USCMA 130, 23 CMR 354. Since he has several functions to perform, "the Staff Judge Advocate must use his intelligence and experience to keep from becoming at one stage of the proceedings so personally involved in the outcome as to preclude him from acting in a later stage." United States v Gunnels, supra; citing United States v Turner, 7 USCMA 38, 21 CMR 164, and United States v Haimson, 5 USCMA 208, 17 CMR 208.

Inasmuch as the lines of distinction between his obligation to both defense and prosecution, and to the command as well, are fine ones indeed, it is not surprising that on occasion the issue of conflict therein is raised by appellate defense counsel. The very nature of these obligations makes the issue paramount. However, since the pretrial advice of the staff judge advocate submitted in compliance with Article 34 (a) of the Code, supra, minimizes the risk of error arising from faulty pretrial investigations and appreciably reduces the preference of ill-founded charges against those subject to military law, the risk of overstepping the bounds of impartiality on later review is justifiable.

Indeed, in enacting the Uniform Code, Congress did not appear to think that the staff judge advocate should be disqualified for his later reviewing function by reason of a prior expression of opinion in connection with reference for trial. United States v Thomas, 3 USCMA 798, 14 CMR 216; United States v Haimson, supra. See also United States v Blau, 5 USCMA 232,

---

[4] "For each general and special court-martial the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate. No person who has acted as investigating officer, law officer, or court member in any case may act later as trial counsel, assistant trial counsel, or, unless expressly requested by the accused, as defense counsel or assistant defense counsel in the same case. No person who has acted for the prosecution may act later in the same case for the defense, nor may any person who has acted for the defense act later in the same case for the prosecution."

17 CMR 232. In fact, he is specifically required to do so by the last-mentioned provision of the Code. And, in connection with the discharge of that duty, we note that the Legal and Legislative Basis, Manual for Courts-Martial, supra, indicates at page 141 that the pretrial advice to the convening authority shall also include a statement of the elements of the offense and the law in point, if not contained in the Manual.

It is only when the staff judge advocate oversteps the bounds of impartiality and becomes a "member" of the prosecution that he is estopped from thereafter passing judgment on the fruit of his labors.

In the case at hand we have minutely scanned the staff judge advocate's advice to the trial counsel and find it almost identical with that which we considered in *Haimson* and *Blau,* both supra.

As in the last-cited cases, so here also, the board of review determined the contents of this letter to be within the permissible limits of instructions to the trial counsel, which instructions could have been incorporated in the advice to the convening authority under Article 34 of the Code, supra. Had this been done, the board observed, citing United States v Thomas, supra, the appellant would have had no valid cause to complain.

Be that as it may, we are constrained to note additional reasons why this action is not indicative of partiality: Primarily, the tone of the letter of which complaint is made is instructive and permissive, not mandatory, as evidenced by the heading of paragraph five, which contains the alleged trial strategy: "The following matters involving prosecutor's case in chief are set forth *for your consideration.*" (Emphasis supplied.) The fact that trial counsel thereafter prosecuted his case along the lines suggested, of course, does not, *per se,* relegate him to the role of parrot for the staff judge advocate. Trial counsel was an experienced advocate and certified in accordance with codal provisions. In view of the abundance and strongly inculpatory nature of the evidence available against accused, it is not unlikely he would have handled his case in much this same manner had he not received the advice.

The second factor of note to us is contained in the last paragraph of the advice. Therein trial counsel was directed by the staff judge advocate to serve a copy of the letter "immediately upon the accused." Thus both parties were put on notice of various aspects of the case important to each. Were the letter to be seriously considered as trial strategy, this is the last thing a member of the prosecution team would desire. Obviously, by his direction, the staff judge advocate evidenced his impartiality.

Further, in the post-trial review and advice, for which appellate defense counsel urge he is disqualified, Colonel Burget recommended both a deferral of the forfeitures until the sentence be ordered executed and a reduction of the period of confinement from three to two years. In the face of a possible maximum sentence including twenty-five years' incarceration, we find it difficult to believe that a *"de facto* member of the prosecution" would so recommend.

Lastly, it should not be left out of consideration that Burget, acting in the place of the staff judge advocate, was—as we have previously pointed out—performing a statutory duty in preparing the pretrial advice and post-trial review. See Articles 34 and 61, Uniform Code of Military Justice, supra. It is the latter task from which we are importuned to hold he was barred. Yet nowhere in the record, including the allied papers, do we find any indication or allegation that the post-trial review —a thirty-page, carefully worded document—was other than wholly fair and complete. Manifestly an accused is entitled to have his post-trial review prepared by an impartial legal advisor. We hasten to point out, however, that such review in the instant case is assuredly not the reflection of any partisan handicraft by Colonel Burget. Moreover, in view of the posture of this case, there is nothing in the pretrial memorandum which would tend to inculcate a predisposition in Burget

378

to act on the post-trial review as anything but an impartial advisor.

For the above-stated reasons and, in accordance with our decision in United States v Haimson, supra, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

My brothers and I are in full agreement on the law of this case, i.e., that an assistant staff judge advocate is disqualified to participate in the preparation of a post-trial review if he has acted as a member of the prosecution even though not formally named in the appointing orders. Indeed, such is the command of the Uniform Code of Military Justice and the teaching of our cases. Code, supra, Article 6, 10 USC § 806; United States v Coulter, 3 USCMA 657, 14 CMR 75; United States v Hightower, 5 USCMA 385, 18 CMR 9; United States v Haimson, 5 USCMA 208, 17 CMR 208; United States v Blau, 5 USCMA 232, 17 CMR 232; United States v Turner, 7 USCMA 38, 21 CMR 164; United States v Judd, 11 USCMA 164, 28 CMR 388.

Our difference of view is predicated upon the application of the foregoing rule to the facts before us. The author of the principal opinion finds that they do not establish the assistant staff judge advocate's participation in this case as a de facto member of the prosecution and likens the situation to that before us in United States v Haimson and United States v Blau, both supra. I respectfully disagree, for I believe that any reasonable scrutiny of the record will at once establish the distinction between this case and our former decisions.

Following a pretrial investigation of the charges, Lieutenant Colonel Carl E. Burget, acting as staff judge advocate in accused's case, executed a pretrial advice to the convening authority on June 23, 1961, in which he recommended trial by general court-martial upon charges of larceny and forgery, in violation of Code, supra, Articles 121 and 123, 10 USC §§ 921, 923. The conven-

ing authority directed accused's trial in accordance with the advice.

On July 3, 1961, Colonel Burget forwarded to the trial counsel an extraordinary document entitled "Advice to Trial Counsel—Charge Sheets and Allied Papers (2nd Lt John H. Mallicote, II, AO3095682, 4627th AB Sq, Custer AFS, Battle Creek, Mich)," which is fully set out in the appendix hereto.

The "Advice" embraced ten pages of detailed instructions concerning the presentation of the Government's case. As will be noted from the appendix, it commenced with an adjuration to try the case promptly, followed with a delineation of the charges and their elements, and concluded with eight pages in which the order and substance of the proof, the question of corpus delicti, issues which might be raised by the defense, and instructions to be requested were set forth to a degree found only in the most carefully prepared trial briefs.

The substance of each witness' testimony was set forth and its relation to the case depicted. Typical of these instructions is the following extract relating to the prosecution's opening witness:

"a. 1st Lieutenant Charles F. Taylor should be called to testify: as to the identity of the accused; that he, Lt. Taylor, is aware that Lt Mallicote was the Secretary of the Officers' Open Mess at Custer Air Force Station from April 1960 to 8 January 1961 at which time he was relieved and succeeded by Lt Taylor. Subsequent to his assuming duties of Secretary of the Open Mess, Lt Taylor while examining a canceled check from a previous bank statement discovered that the payee was an Airman Second Class John Straub who had previously worked for Lt Taylor at the Motor Pool, Custer Air Force Station, in the summer of 1960. While the reported investigation is not clear as to which check Lt Taylor uncovered, this, of course, should be brought out in his examination. Lt Taylor should additionally testify that he was aware of the fact that Airman Straub had departed Custer

Air Force Station prior to the date of the check, that he had uncovered. *A proper foundation should be laid utilizing Lt Taylor's testimony concerning the particular check and where precisely it was uncovered. You should then be able to introduce this particular check in evidence."* [Emphasis supplied.]

A similar course was followed with each witness to be used by the Government and, as noted above, with respect to expected issues and instructions. Exemplary of the further detail of the brief are its comments on an expected question of voluntariness in connection with accused's confession:

"a. *Voluntariness of Confession*— It appears from the Report of Investigation that defense may attempt to resist the introduction of the confession based on the fact

"(1) That accused's statement was taken previously by persons other than the OSI Agent without a proper warning of his rights under Article 31, and

"(2) That the information obtained by the OSI Agent was based on these allegedly previous involuntary statements. Specifically, defense claimed in the investigation that accused gave a statement to Colonel Hanson, Colonel Herbes, and Lieutenant Dearborn. In this regard it appears from Mr. Star's statement (Exhibit 10) that the accused may have made a statement to Colonel Hanson and Colonel Herbes; however, it is evident that accused solicited these interviews; and statements such as this are made spontaneously. These statements are admissible notwithstanding the Commander's failure to warn the accused of his rights. The basis of this rule is that these types of statements do not fall within the class of statements obtained by interrogation or request during the official investigation (CM 364606, Simpson, 12 CMR 255; ACM 6913, Matthews, 13 CMR 615)."

Other discussion was included regarding issues of venue, weight of the evidence, multiplicity, indefiniteness of the charges, and proof of intent. Extensive citations to decided cases were included.

An entire section of the "Advice" dealt with instructions, informing the trial counsel not only of the nature of those which he should request but giving exact references to appropriate sections of the Air Force's Court-Martial Instruction Guide. Even the maximum punishment was computed for the prosecutor, and he was told the need for advice to the court thereon.

At the trial, counsel for the government carefully followed the "Advice" so prepared for him. After accused was convicted and sentenced, Colonel Burget prepared the post-trial review of the proceedings for the convening authority. In it, among other things, he devoted considerable attention to the sufficiency of the circumstantial evidence to establish accused's intent to steal and the intent to defraud, the question of multiplicity and the voluntariness of accused's confessions, all of which he had earlier covered in his "Advice" to the trial counsel. After careful consideration of an extensive post-trial evaluation of accused, he recommended reduction of the adjudged confinement to two years and approval of the balance of the sentence. The convening authority took action in accordance with Colonel Burget's recommendations.

Code, supra, Article 6(c), 10 USC § 806, provides:

"(c) No person *who has acted* as member, law officer, *trial counsel, assistant trial counsel,* defense counsel, assistant defense counsel, or investigating officer *in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case."* [Emphasis supplied.]

In enacting the Code, the Congress expressly noted that the foregoing provision was "designed to secure review by an impartial staff judge advocate or legal officer." Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 898, 901; House Report No. 491, 81st

Congress, 1st Session, page 13. It prohibits the employment of anyone as the draftsman of the post-trial review who has previously acted in a partisan capacity. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 138.

In United States v Coulter, supra, at page 659, the Chief Judge declared for the Court:

"Under the Uniform Code no person may serve in the same case in the dual role of trial counsel and Staff Judge Advocate to the reviewing authority. Such conduct is proscribed in mandatory terms by Article 6(c), . . .

". . . In view of the purpose and the language of Article 6(c), supra, we conclude that the error is one which evokes the principles of general prejudice.

"The obvious purpose of the lawmakers in prohibiting trial counsel from subsequently acting as the Staff Judge Advocate on the review of the same case was to assure the accused a thoroughly fair and impartial review." [Emphasis supplied.]

The staff judge advocate in Coulter, supra, was the actual trial counsel. In United States v Hightower, supra, we pointed out that the legislative prohibition also extended to one who had acted as prosecutor in the case of a co-accused. And in United States v Clisson, 5 USCMA 277, 17 CMR 277, at page 280, we reiterated that:

"Article 6(c) of the Uniform Code is designed to assure a fair and impartial review. Fairness and impartiality are demanded not only with respect to the law, but in connection with the sentence. Here, as in United States v Coulter, supra, we do not doubt the personal integrity of trial counsel, but we cannot overlook the fact that his previous antagonistic role prevents his exercising that degree of impartiality required by the Code." [Emphasis supplied.]

In the Haimson case, supra, an endorsement to the charge sheet was prepared by an assistant staff judge advocate, which, while "particularized in some respects," contained "nothing that a staff judge advocate could not say permissibly in advising the convening authority." Expressly noting that the endorsement did not "constitute an outline of trial strategy, but rather an exhortation to effect a full and fair presentation of the evidence," we found that the assistant was not disqualified to participate in the post-trial review by reason of having acted on behalf of the Government. See also United States v Blau, supra.

In my opinion, Colonel Burget's execution of the "Advice" to the trial counsel beyond cavil establishes his status as a member of the prosecution. The document which he authored constituted a thoroughly detailed and well researched brief of the facts and law applicable to the referred charges. The order of the witnesses is set out and the line of inquiry to be pursued with each set forth. Defense issues and motions are anticipated and relevant authorities to meet them gathered. Instructions to be requested from the law officer are included as well as discussion of the legal problems involved. Indeed, even the maximum possible sentence is multiplied out for the trial counsel's use. With this brief in hand, he had no occasion to entertain "any uncertainty as to just what should be done at any stage of the trial . . . [nor] any fear of overlooking some element of proof necessary." Goldstein, Trial Technique, section 109. In short, as appellate defense counsel contend, Colonel Burget here played the role of solicitor to the trial counsel's performance as barrister.

Turning to the post-trial review, it is equally apparent that Colonel Burget there passed upon many of the issues concerning which he had already devised a means to meet in his pretrial instructions to the trial counsel. We find, therefore, in this case direct evidence of the partiality and bias which Congress sought to avoid by enactment of Code, supra, Article 6(c), for as we pointed out in United States v Renton, 8 USCMA 697, 25 CMR 201, at page 701:

**381**

". . . Human nature being what it is, the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome. . . ."

Turning to my brothers' rationale, I find dependence by them almost solely upon our decisions in *Haimson* and *Blau*, both supra. I suggest, however, they overlook the fact that we there took the trouble to point out that the memoranda involved were nonpartisan in approach and in nowise constituted an outline of trial strategy for the United States. On that basis alone, we held the assistant staff judge advocate not to have been made a member of the prosecution by reason of having prepared these endorsements.

Here, however, the situation is quite different. The "Advice" consists of a clearly partisan outline of trial strategy for the Government and informs counsel precisely how to insure that a strong case is presented. Not only does it mention no factor favorable to Lieutenant Mallicote, but it actually anticipates defense issues and states methods of dealing with them. In short, this is exactly the sort of memorandum with which we said we were *not* dealing in *Haimson* and *Blau* and which we there inferentially condemned.

The principal opinion also points out that a copy of the "Advice" was to be served on defense counsel, a direction which, in its view, seriously conflicts with the concept of the document being "trial strategy." Such a procedure certainly offers some advantage to the defense, but I suggest that its consideration is immaterial here. The question is not whether Colonel Burget sought to apprise defense of what the Government intended to do, but whether the document itself was a trial brief. Indeed, I suppose according weight to such service means the actual trial counsel may put himself beyond the prohibition in Article 6(c) and become the author of the review if he foresightedly hands a copy of his brief to the defense counsel.

Finally, the majority lean upon the slender reed of Colonel Burget's recommendation that confinement included in the sentence be reduced to only two years' imprisonment as being inconsistent with the role of a prosecutor. Aside from the fact that I am unwilling to ascribe vindictiveness to counsel for the Government, I point out that Burget's recommendation was based upon an extensive post-trial clemency report containing much information not available at the time of the actual hearing. I suggest, therefore, that this *post hoc* consideration is hardly germane. The question before us is not whether some reduction in the sentence was recommended but whether an impartial officer made the recommendation. United States v Coulter, supra; United States v Clisson, supra.

In sum, then, I am compelled to conclude that the document here involved is a detailed trial brief and that its author, Lieutenant Colonel Burget, was disqualified to prepare the post-trial review. When my brothers reach the contrary conclusion, I believe they ignore the import of the Congressional mandate and effectively repeal Code, supra, Article 6(c), as to all except appointed members of the prosecution staff. In good conscience, I cannot so construe the statute nor agree that Burget could write the document here without aligning himself with the United States. Accordingly, I register my dissent from the affirmance.

I would reverse the board of review and order further proceedings under Code, supra, Articles 61, 64, 10 USC §§ 861, 864.

**Appendix:**

## HEADQUARTERS
## 30TH AIR DIVISION (SAGE)
## UNITED STATES AIR FORCE
## TRUAX FIELD, WISCONSIN

Reply to
Attn. of:   30–CJA                                         3 July 1961

Subject:   Advice to Trial Counsel—Charge Sheets and Allied Papers (2nd
Lt John H. Mallicote, II, AO3095682, 4627th AB Sq, Custer
AFS, Battle Cheek, Mich)

To:   Captain Walter G. Kozlowski
Hq 30th Air Division (SAGE)
Truax Field, Wisconsin

1. Charge Sheet and allied papers in the case of 2nd Lieutenant John H. Mallicote, II, AO3095682, 4627th Air Base Squadron, Custer Air Force Station, Battle Creek, Michigan, have been referred to you for trial as trial counsel of the General Court-Martial appointed by Special Orders Number C-4, this Headquarters, dated 27 June 1961. Prompt trial of this case is desired, and all delays in excess of the time standards established by AFR 111–10, dated 27 September 1951, will be fully explained in a letter attached to the record of trial.

2. You will advise this Headquarters of the date of trial as soon as it has been determined, and should the case not be disposed of within two weeks after you receive the Charges, you will submit the reasons therefor in conformance with the Manual for Courts-Martial, 1951, Paragraph 44e (1).

3. The accused is charged:

   a. Charge I—Violation of the Uniform Code of Military Justice, Article 121. One Specification alleging that from 15 October 1960 to on or about 2 January 1961 the accused did steal the sum of $185.20 from the Officers' Open Mess, Custer Air Force Station, Battle Creek, Michigan.

   b. Charge II — Violation of the Uniform Code of Military Justice, Article 123 — Forgery. Specifications 1 through 5 with forging the endorsement of "John Straub" on five separate checks of the Officers' Open Mess, Custer Air Force Station, dated 31 October 1960 ($35.80); 15 November (1960) ($41.90); 30 November 1960 ($40.00); 15 December 1960 ($30.00); and 2 January 1961 ($37.50).

4. The elements of the offense of larceny are:

   a. That at the time and place alleged the accused wrongfully (took) (obtained) or withheld from the possession of the true owner the property described in the Specification.

   b. That such property belonged to certain persons named or described.

   c. That such property was of the value alleged or some lesser value in which case the findings should be in the lesser amount.

   d. That the taking, obtaining or withholding by the accused was with the intent to permanently deprive or defraud another person of the use and benefit of the property or permanently to appropriate the same to his own use or for the use of another person other than the true owner (U. S. v Aldridge (No. 686) 2 USCMA 330; 8 CMR 130; ACM 12672, King, 22 CMR 856; U. S. v Lane (No. 10,645) 9 USCMA 369, 26 CMR 149).

The elements of forgery are as follows:

   a. That at the time and place alleged the accused falsely made a certain signature as alleged;

**383**

b. That the signature would, if genuine, apparently impose a legal liability on another or change the legal right or liability to his prejudice;

c. That the accused thereby intended to defraud. The term "defraud" means to deprive another person of something of value by cheating, deceiving, misleading, tricking, or causing that person to believe as true that which is false (U. S. v Addye (No. 8694) 7 USCMA 643, 23 CMR 107); CM 39 1083, Plante, 22 CMR 389; ACM 14153, Pena, 24 CMR 810).

5. The following matters involving prosecutor's case in chief are set forth for your consideration:

a. 1st Lieutenant Charles F. Taylor should be called to testify: as to the identity of the accused; that he, Lt Taylor, is aware that Lt Mallicote was the Secretary of the Officers' Open Mess at Custer Air Force Station from April 1960 to 8 January 1961 at which time he was relieved and succeeded by Lt Taylor. Subsequent to his assuming duties of Secretary of the Open Mess, Lt Taylor while examining a canceled check from a previous bank statement discovered that the payee was an Airman Second Class John Straub who had previously worked for Lt Taylor at the Motor Pool, Custer Air Force Station, in the summer of 1960. While the reported investigation is not clear as to which check Lt Taylor uncovered, this, of course, should be brought out in his examination. Lt Taylor should additionally testify that he was aware of the fact that Airman Straub had departed Custer Air Force Station prior to the date of the check, that he had uncovered. A proper foundation should be laid utilizing Lt Taylor's testimony concerning the particular check and where precisely it was uncovered. You should then be able to introduce this particular check in evidence.

b. Mrs. Dorothy Gibson should be called to testify: that she was employed as Bookkeeper at the Custer Air Force Station Officers' Open Mess during a period of time which is not precisely set forth in the investigation, but it is assumed that the period of time of employment include the months of October, November, and December to the present date. She should be able to testify that she is familiar with the procedures for employment of persons by the Mess, particularly in the hourly wage class, including the maintaining of journals, ledgers, payrolls, and financial statements. She should, of course, identify the accused and testify that he was the Officer in Charge during the particular periods from October 1960 through 8 January 1961. From her testimony you should be able to clearly show that either the Club Steward, Technical Sergeant Pharris, or the Officer in Charge, in this case Lt Mallicote, supplied her with the names of those persons who were to be paid or those persons who were employed by the Club in order that she might enter the names in the payroll (see Infra c).

Specifically, she should be able to identify Exhibit 12, the particular payroll, and summary ledger sheet concerned with Airman Second Class John Straub. She should indicate how the information is placed on this sheet and the source of the information. You should encounter no resistance in introducing this particular journal, since it appears to be a business entry (U. S. v Villasenor (No. 5895) 6 USCMA 3, 19 CMR 129, 134; ACM 5561, Roberson, 12 CMR 768). She should also be familiar with the five checks, the subject of Charge II, in that she can identify her own handwriting which appears on these checks with the exception of the signature of the maker or endorser and, of course, the endorsement on the back. Again, you should emphasize the connection between the information contained on the check including the amount and the source of this information. Mrs. Gibson should also testify that either she observed that the accused countersigned these checks or that she is familiar with his signature in that she has seen the accused sign his name on various occasions in order to establish that he did in fact countersign this check. From the investigation it appears that she did not witness the endorsement of the check, and this should be brought out in her

testimony. She can also testify that that these checks were returned from the bank, and the fact that the Club does maintain an account in the Augusta Branch Bank of Industrial State chain, Kalamazoo, Michigan. She should also testify based on her own knowledge concerning the check cashing fund that is maintained apparently by the Secretary of the Mess and included in this explanation should be the amount normally maintained and where the fund is physically located. The Report of Investigation does not establish a shortage or loss in the accounts of the Club. Mrs. Gibson should be able to furnish the information to make this showing. This can be accomplished by introduction of the various account records and documents that she maintained and/or that she has examined. She should be able to testify as to this shortage from her examination of the books and records. It is not necessary that you lay a foundation that she is an expert witness, but rather based on the showing that you have already made as to her duties and responsibilities, should establish her as a skilled witness, to wit: a person of ordinary capacity who possesses special knowledge not common to others or outside the limits of common observation, gained from experience, and which knowledge may relate to the defendant or to some particular business, or subject matter, or some point in issue (Underhill's Criminal Evidence, 5th Edition, Volume 2, Section 305, Page 764). While she cannot testify as to content of these particular documents, she can explain their meaning in order to establish the shortage.

c. Technical Sergeant R. W. Pharris should be called to testify: that he is the Club Steward and was acting in this capacity during the period of time that the accused was Secretary of the Mess. He should indicate his familiarity with the procedures involving the payment of wages, the class of workers who receive an hourly recompense. He should particularly emphasize the fact that one of his responsibilities is to maintain time sheets on these employees and that most generally he provides the information contained on the time sheets to the Bookkeeper for the purposes of making out payroll. However, in the case of Airman Straub he provided no such information to Mrs. Gibson. That Airman Straub was not an employee of the Officers' Open Mess in October, November, December 1960 or January 1961.

d. Marguerite Ratcliff, Assistant Cashier of the Augusta Branch, Industrial State Bank, Kalamazoo, Michigan, or some other qualified officer should be called to testify: that she is familiar with the account or accounts of the Officers' Open Mess, Custer Air Force Station, that are maintained at her branch bank. She should be able to describe these various accounts concentrating on the check cashing fund account if it is maintained separately in the bank. She should testify that the checks that are the subject of Charge II were deposited at her bank and paid, and she should produce the records maintained therein to substantiate this testimony. Her testimony and the records that she provides you should also corroborate the testimony of Mrs. Gibson concerning the shortage in the Check Cashing Fund. These matters are not available in the Report of Investigation; however, they should be available for trial.

e. Airman Second Class John Straub, 677th AC&W Squadron, Nova Scotia, Canada, should be called to testify: that the period of time that he was employed at Custer Air Force Station; the fact that he was employed during the early part of 1960 in the Officers' Open Mess; that he departed Custer Air Force Station on or about 24 October 1960, PCS for his present duty assignment. He should indicate whether or not he was acquainted with the accused. He should further testify that he did not authorize the accused or anyone else to sign his name to the back of the checks which are the subject of Charge II, nor did he authorize anyone to place his name on the Officers' Open Mess payroll for the months of October through December 1960 and January of 1961. He should also state he did not receive any money from Lt Mallicote subsequent to his transfer from Custer Air Force Station. (You may desire

**385**

to utilize a written stipulation in lieu thereof.)

6. Thus, you should establish a corpus delicti in reference to the Specification in Charge I (U. S. v Isenberg (No. 579) 2 USCMA 349, 8 CMR 149) and in reference to the Specifications under Charge II (U. S. v Manuel, (No. 2638) 3 USCMA 739; 14 CMR 157) permitting the introduction of accused's pre-trial statement. To accomplish this you should call as a witness Special Agent Robert A. Star of the Office of Special Investigations, Custer Air Force Station, Michigan. Through Mr. Star's testimony you should establish a proper foundation for the introduction of the accused's pre-trial statement. Included in the foundation is an affirmative showing as to the voluntariness thereof (Paragraph 140a, MCM, 1951; U. S. v Monge, (No. 9) 1 USCMA 95, 2 CMR 1). The original statement of the accused in his own handwriting, if available, should be utilized. From reading the expected testimony of Mr. Star contained in Exhibit 10, it would appear that you will be able to meet the requirement of voluntariness. You may desire to utilize the testimony of Mr. Star and introduce the oral confession of the accused as made to Mr. Star only; however, while this is entirely permissible, that is, you are under no requirement to introduce the written confessions, it would be better to utilize the latter (U. S. v Molette, (No. 2735) 3 USCMA 674, 14 CMR 92; citing MCM, 1951; also Manuel, *Supra*). Prior to trial you should determine from Mr. Star whether or not the resulting statement (Exhibit 6) made by the accused on 20 February 1961 was a collection of statements or if the statement made by the accused is in any way different from the original statement, if any, or from any other statement made by the accused. If the only difference is in choice of words or corrections in grammar, you should include this in laying your foundation at the time of trial, and objection by defense that accused was not the author of this statement or the only showing consists of changes of grammar, minor corrections, and even different words where there is no change in substance or content is without merit

**386**

(U. S. v Dickenson, (No. 6238) 6 USCMA 438, 20 CMR 154).

7. Defense may raise the following issues, which you should be prepared for:

a. *Voluntariness of Confession*—It appears from the Report of Investigation that defense may attempt to resist the introduction of the confession based on the fact

(1) That accused's statement was taken previously by persons other than the OSI Agent without a proper warning of his rights under Article 31, and

(2) That the information obtained by the OSI Agent was based on these allegedly previous involuntary statements. Specifically, defense claimed in the investigation that accused gave a statement to Colonel Hanson, Colonel Herbes, and Lieutenant Dearborn. In this regard it appears from Mr. Star's statement (Exhibit 10) that the accused may have made a statement to Colonel Hanson and Colonel Herbes; however, it is evident that accused solicited these interviews; and statements such as this are made spontaneously. These statement are admissible notwithstanding the Commander's failure to warn the accused of his rights. The basis of this rule is that these types of statements do not fall within the class of statements obtained by interrogation or request during the official investigation (CM 364606, Simpson, 12 CMR 255; ACM 6913, Matthews, 13 CMR 615).

b. *Venue*—From the Report of Investigation it appears that defense may persist in his demand for a change of venue or change of place of trial. This is properly accomplished by motion for appropriate relief. It is presumed that a fair trial can be had at Custer Air Force Station. The burden is, of course, on the accused to establish that the accused cannot be afforded a fair and impartial trial because of hostility or prejudice existing against him at the place of trial. It is also well settled that the fact that newspaper articles give publicity to a crime charged or to matters connected with the prosecution thereof are not alone sufficient to con-

stitute a showing of local prejudice warranting a change of venue. It must be additionally shown that these articles so inflamed or aroused public feeling in the community that the accused cannot obtain a fair and impartial trial. In this particular case the court members appointed to try this case are not from Custer Air Force Station. In the case of challenge of the court members the rule is much the same, to wit: that regardless of what they have heard or read the information must have influenced them to such degree as to prevent them from fairly and impartially trying the case both from the standpoint of the Government and from the accused (ACM 8768, Doyle, 17 CMR 615; U. S. v Gravit, (No. 4889) 5 USCMA 249, 17 CMR 249).

c. *Charge II—Weight of the Evidence*—Defense may attempt to establish that there is no evidence showing that the check was negotiated or uttered by the accused. Failure to show that the check was in fact negotiated or that the accused received something of value is not fatal, since, in the first place, he is not charged with uttering a check, and, secondly, it is not material that the accused intended to profit or did so (ACM 16252, Wilson, 28 CMR 844).

d. *Multiplicity—*

(1) In the event the court finds the accused guilty of the Specification of Charge I and Specifications 1 through 5 of Charge II, multiplicity will arise for sentencing purposes. You are advised in this regard that when the aforesaid occurs the maximum imposable punishment is dismissal, confinement at hard labor for twenty-five (25) years, and total forfeitures of all pay and allowances (U. S. v Soukup, (No. 533) 2 USCMA 241, 7 CMR 17).

(2) You will note that Charge I alleges a single larceny rather than five separate larcenies. Whether or not the Specification under Charge I amounts to one larceny or five separate larcenies is a question of law and fact dependent upon the proof (U. S. v Hall, (No. 7117) 6 USCMA 562, 20 CMR 278; U. S. v Swigert, (No. 9881) 8 USCMA 468, 24 CMR 278). Even assuming, *arguendo,* that five separate larcenies are in fact proved, under the theory of the Taylor case, the accused cannot complain from the standpoint of punishment, since the total punishment for five separate larcenies involving a value of less than $50.00 or more than $20.00 is the same as the punishment for one larceny of a value of over $50.00, to wit: *inter alia,* five (5) years' confinement at hard labor (U. S. v Taylor, (No. 6473) 6 USCMA 289, 20 CMR 5). It is important to note that the questions involved here cannot be determined until the proof is in and a premature motion on the part of the defense should be resisted.

e. *Indefiniteness as to Date—Charge I*: A Specification charging the accused with an offense during a certain period is not indefinite or uncertain merely because it fails to set forth the exact date upon which the offense took place, where there is no indication that the accused was thereby misled and since time is not of the essence of such offense (ACM 5653, Dolen, 7 CMR 666, 674).

f. *Intent—Charge II—Proof of Intent by Circumstantial Evidence*: Defense may attempt to establish that there is no evidence showing the accused intended to defraud. In this regard it is noted that Airman Straub will testify that he had not given permission to the accused to sign his name to any check. In addition, the evidence should establish that the accused was familiar with Airman Straub. These circumstances together with the other evidence concerning accused's familiarity with the procedures for placing employees' names on the payroll and making out a check is sufficient to negate good faith or ignorance on the part of the accused and, in turn, establishes the required intent (CM 391083, Plante, 22 CMR 389).

8. *INSTRUCTIONS*: You should request that the following instructions be given:

a. *Larceny*: Instruction No. 89, Pages 55 and 56, CMIG.

b. *Forgery*: Instructions 92, Page 58, CMIG.

**387**

c. *Proof of Intent by Circumstantial Evidence*: Page 122, CMIG.

d. *Confessions*: Page 116, CMIG.

e. *Skilled testimony*: Page 118, CMIG.

The remaining mandatory instructions under Art. 51c should be given.

9. If necessary, you should caution the Law Officer not to refer court members to Paragraph 74a, MCM, 1951, but to summarize this paragraph as an instruction. Paragraphs 3 and 4, Court-Martial Instruction Guide (U. S. v Boswell, (No. 9345) 8 USCMA, 23 CMR 369). The members of the court should not be permitted access to the Manual for Courts-Martial at any time during the trial of this case, and this should be reflected in the record (U.S. v Rinehart, (No. 9647) 8 USCMA 402, 24 CMR 212).

10. In the event of a finding of guilty of the Specification of Charge I and the five Specifications of Charge II, the maximum punishment that can be adjudged by the court is dismissal, confinement at hard labor for twenty-five (25) years, and total forfeitures and allowances. The court must be instructed on the maximum permissible punishment (U. S. v Turner, (No. 10,022) 9 USCMA 124, 25 CMR 386).

11. Major General James C. Jensen was in command of this Division on the date the court was appointed and on the date the case was referred to trial. This should be reflected in the record.

12. In the event any of the appointed members of the court request to be excused the request for such excuse containing the reasons therefor will be made by electrical message or telephone to the convening authority (U. S. v Allen, (No. 5611) 5 USCMA 626, 18 CMR 250; Paragraph 45, Air Force Manual 110–8).

13. A copy of the Charges and the allied papers, including this letter of instruction, will be served immediately upon the accused upon receipt by you. Trial will not be held until five (5) days after the service of Charges upon the accused unless he consents thereto to the trial of the case, bearing in mind that the Law Officer must be furnished with timely notice of trial. After trial you will cause the record thereof to be prepared and forwarded to this Headquarters in accordance with the provisions of Paragraph 82, ACM, 1951.

/s/ Carl E. Burget
CARL E. BURGET
Lt Colonel, USAF
Acting Staff Judge Advocate