*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Kevin S. CHANDLER, Airman Basic**
United States Air Force, Appellant

**No. 20-0168**
Crim. App. No. S32534

Argued November 18, 2020—Decided January 27, 2021

Military Judge: Brian Teter

For Appellant: *Captain Alexander A. Navarro* (argued); *Mark C. Bruegger*, Esq. (on brief).

For Appellee: *Major Dayle P. Percle* (argued); *Colonel Shaun S. Speranza* and *Mary Ellen Payne,* Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, Judges SPARKS and MAGGS, and Senior Judge RYAN, joined.

————————

Judge OHLSON delivered the opinion of the Court.

Appellant was tried by a military judge alone at a special court-martial. He was convicted, pursuant to his pleas, of two specifications of use of marijuana, two specifications of use of cocaine, one specification of distribution of marijuana, and one specification of distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2012). The convening authority approved the adjudged sentence of confinement for five months, forfeiture of $1,000 pay per month for five months, and a bad-conduct discharge. The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and sentence. *United States v. Chandler*, No. ACM S32534, 2020 CCA LEXIS 11, at *2, 2020 WL 278401, at *1 (A.F. Ct. Crim. App. Jan. 13, 2020) (unpublished).

We granted review of the following issue:

> The staff judge advocate negotiated the inclusion of aggravating evidence in a stipulation of fact, over defense objection, and after disputing the defense's

version of events, the staff judge advocate provided
post-trial advice to the convening authority. Did the
staff judge advocate's pretrial conduct warrant dis-
qualification?

*United States v. Chandler*, 80 M.J. 150 (C.A.A.F. 2020) (order
granting review).

For the reasons cited below, we hold that the staff judge
advocate's (SJA) actions did not disqualify him from advising
the convening authority under Article 6(c), UCMJ, 10 U.S.C.
§ 806(c) (2012), and Rule for Courts-Martial (R.C.M.) 1106(b)
(2016). Therefore, we affirm the decision of the lower court.

## I. Facts

## A. Background

In an interview with the Air Force Office of Special Inves-
tigations (AFOSI) at Tinker Air Force Base, Oklahoma, Ap-
pellant confessed to using marijuana 40 times and cocaine
150 times between November 2016 and October 2017. Appel-
lant also confessed to distributing a gram of marijuana to
three individuals in exchange for money, and to distributing
around one to two grams of cocaine to a fellow airman twice,
once by mail without payment and once in person in exchange
for payment, between November 2016 and October 2017.

Following his AFOSI confession, Appellant agreed to be-
come a confidential informant for law enforcement operations
and to attend counseling for his substance abuse. (However,
Appellant reported at a February 2018 counseling appoint-
ment that he had relapsed and wrongfully used marijuana
between January and February 2018, and cocaine in Febru-
ary 2018.[1] He consented to providing a urine sample, which
tested positive for cocaine and marijuana metabolites.

## B. Negotiation of the Pretrial Agreement

Before trial, negotiations took place regarding a potential
pretrial agreement (PTA) which required Appellant, inter
alia, to "[e]nter into a *reasonable* stipulation of fact for the
government." (Emphasis added.) In early March 2018, the

---

[1] Appellant's drug use was unrelated to his work as a confiden-
tial informant. Appellant admitted that he did not believe he had
any legal justification or excuse for using marijuana or cocaine.

SJA called Appellant's defense counsel to discuss the pro-
posed stipulation. Government trial counsel and the defense
paralegal were also a part of this phone call. The SJA stated
that the stipulation ought to include Appellant's admission
that he used marijuana approximately 40 times and cocaine
approximately 150 times. Defense counsel was reluctant to
have Appellant stipulate to that many uses because the Gov-
ernment had charged divers uses and defense counsel did not
believe the Government could corroborate all of those uses
during the charged time frames. Nevertheless, after the call,
both Appellant and defense counsel signed the PTA and Ap-
pellant agreed to a stipulation with the terms outlined by the
SJA in the phone call. The SJA then signed the offer and rec-
ommended acceptance to the convening authority. The con-
vening authority accepted and approved the PTA in accord-
ance with the SJA's recommendation.

## C. Court-Martial Proceedings

During the guilty plea proceedings, the Government intro-
duced the stipulation of fact. With regard to divers use of ma-
rijuana and cocaine, the stipulation stated, inter alia:

> [B]etween on or about 8 November 2016 and on or
> about 17 October 2017, the Accused used marijuana
> approximately 40 times by smoking it. The Air Force
> may not have evidence to corroborate all of the 40
> uses individually, but the Accused wants to admit
> what he did and take accountability for those uses.
>
> . . . .
>
> . . . [B]etween on or about 8 November 2016 and
> on or about 17 October 2017, the Accused used co-
> caine on approximately 150 different occasions. Alt-
> hough the government may not be able to corrobo-
> rate all 150 specific uses the Accused admitted to
> AFOSI, the Accused agreed to admit to this fact be-
> cause he believes it is the right thing to do.

The court sentenced Appellant to five months of confine-
ment, forfeiture of $1000 of pay per month for five months,
and a bad-conduct discharge.

## D. Defense Objection to the SJA's Involvement

Both before and during the clemency proceedings defense
counsel objected to the SJA's post-trial involvement in this
case, citing the SJA's phone call about the contents of the

stipulation of fact. Defense counsel initially contacted the legal office with his concern so that the office could find a different individual to complete the staff judge advocate recommendation (SJAR). That request was denied and the SJA elected to draft and sign the SJAR on June 8, 2018, opining that the sentence was appropriate and recommending that the convening authority approve it. In the SJAR the SJA noted in particular that "[t]he primary evidence against [Appellant] consisted of a plea of guilty, [a] stipulation of fact, and a confession."

On June 21, 2018, defense counsel submitted Appellant's clemency matters, alleging multiple legal errors related to Appellant's trial. In his submission, defense counsel again challenged the SJA's continued participation in the case by claiming that the SJA disqualified himself from advising the convening authority on clemency matters because of his participation in the negotiation of the stipulation of fact. Specifically, defense counsel made the following argument:

> The negotiation of a stipulation of fact belongs to the role of the prosecutor, not of the detached individual that will advise the convening authority on post-trial issues. Due to the fact that the SJA elected to take on the role of prosecutor in this case, he should have been disqualified under Article 6(c), UCMJ, and RCM 1106(b) from participating in post-trial review. Defense counsel alerted the legal office of this concern through the Chief of Military Justice to allow the prosecution to find another person to write the SJAR, but the SJA elected to write the SJAR anyway. The SJA's willingness to call defense counsel to negotiate specific provisions of the pretrial agreement goes beyond the appropriate involvement of an SJA advising the convening authority.

On July 2, 2018, the SJA signed an addendum to the SJAR in which he repeated his recommendation that the convening authority approve the findings and adjudged sentence. The SJA advised the convening authority that defense counsel's complaint regarding the SJA's involvement in negotiating the stipulation of fact was "without merit." The SJA explained that R.C.M. 705(d)(1) expressly permits an SJA to initiate PTA negotiations, and the stipulation of fact was part of the PTA offer. The SJA concluded that apart from his single conversation with defense counsel about the PTA, he had no

active part in preparing the case and had only an official interest in the case as the convening authority's legal advisor. On July 6, 2018, the convening authority approved the adjudged sentence.

## II. Standard of Review

The issue of whether an SJA is disqualified from participating in the post-trial review of a case is a question of law which we review de novo. *United States v. Taylor*, 60 M.J. 190, 194 (C.A.A.F. 2004); *United States v. Stefan*, 69 M.J. 256, 258 (C.A.A.F. 2010).

## III. Applicable Law

One of the goals of the UCMJ is to "assure the accused a thoroughly fair and impartial review" of his case. *United States v. Lynch*, 39 M.J. 223, 228 (C.M.A. 1994). Towards that goal, Article 6(c), UCMJ, says in pertinent part that no person who served as trial counsel in a case "may later serve as a staff judge advocate or legal officer to any reviewing or convening authority upon the same case." *See also* R.C.M. 1106(b) ("No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, associate or assistant defense counsel, or preliminary hearing officer in any case may later act as a staff judge advocate or legal officer to any reviewing or convening authority in the same case.").

A person does not need to be officially detailed as trial counsel in order to "act" as trial counsel. *Stefan*, 69 M.J. at 257–58. Rather, "a person will be disqualified from acting as the SJA if that person *performed the duties* of a disqualifying position." *Id.* at 258 (citing *United States v. Mallicote*, 13 C.M.A. 374, 376, 32 C.M.R. 374, 376 (1962) (emphasis added)). An SJA may become ineligible when (1) he or she displays "a personal interest or feeling in the outcome of a particular case," *United States v. Sorrell*, 47 M.J. 432, 433 (C.A.A.F. 1998); (2) there is a legitimate factual controversy with defense counsel, *Lynch*, 39 M.J. at 228; or, (3) he or she fails to be objective, such that it renders the proceedings unfair or creates the appearance of unfairness. *Taylor*, 60 M.J. at 193; *see also United States v. Willis*, 22 C.M.A. 112, 114, 46 C.M.R. 112, 114 (1973) (An SJA "may become so deeply and personally involved as to move from the role of adviser to the

role of participant."); R.C.M. 1106(b) Discussion (listing circumstances where the SJA may become ineligible).[2]

In determining whether an SJA is disqualified, this Court will consider "the action taken, the position of the person that would normally take that action, and the capacity in which the action is claimed to have been taken." *Stefan*, 69 M.J. at 258 (disqualifying the chief of military justice as she caused charges to be served on the accused and acknowledged that she performed that act as trial counsel); *see also United States v. Edwards*, 45 M.J. 114, 115–16 (C.A.A.F. 1996) (disqualifying the legal officer because he investigated charges, conducted the interrogation, and acted as the custodian of evidence during the pretrial phases).

## IV. Analysis

Appellant argues that the SJA was disqualified under Article 6(c), UCMJ, and R.C.M. 1106(b) from participating in the post-trial review process of this case because: (a) the SJA acted as trial counsel as he directly shaped the stipulation of facts, which became a prosecution exhibit; (b) his actions reflected a personal interest in the case; (c) there was a legitimate factual controversy regarding his pretrial conduct; and (d) his conduct created the appearance of unfairness during the post-trial process. Appellant further asserts that because the SJA prepared and signed the SJAR, and then later signed an addendum to the SJAR stating that these defense arguments were "without merit," the case should be remanded for new post-trial processing by an impartial SJA. We will address each of these points in turn.[3]

---

[2] The provisions of a discussion section to the R.C.M. are not binding but instead serve as guidance. *See, e.g.*, *United States v. New*, 55 M.J. 95, 113 (C.A.A.F. 2001) (Effron, J., concurring) (referring to an R.C.M. Discussion section as "non-binding"); *Manual for Courts-Martial, United States* (*MCM*) pt. 1, para. 4, Discussion (2016 ed.) ("These supplementary materials . . . do not constitute rules [or] are binding.").

[3] The Government contended at oral argument that Appellant waived any objection to the SJA's participation as the SJA in this case. We decline to consider this contention because the Government did not address waiver in its brief and because we accept the Government's other arguments.

## A. The SJA Did Not Act as Trial Counsel

Appellant first asserts that although R.C.M. 705(d)(1) authorizes an SJA to initiate pretrial negotiations, stipulations of fact are fundamentally evidentiary exhibits and their creation remains within the exclusive province of trial counsel. Therefore, when the SJA told defense counsel that Appellant needed to stipulate to his confession and implied that the convening authority would not accept the PTA without that inclusion, Appellant argues that the SJA performed the duties of trial counsel and was therefore disqualified from advising the convening authority on post-trial matters. We disagree.

The R.C.M. do not expressly address whether an SJA may notify the parties that a specific term or condition needs to be included in a PTA *before* the PTA is offered to the convening authority. *See* R.C.M. 705(c)(3)(A) ("The convening authority . . . may propose by *counteroffer* any terms or conditions not prohibited by law or public policy." (emphasis added)). Further, there are no cases interpreting the R.C.M. that address this particular point.[4] However, we conclude that the SJA's actions did not transform him into trial counsel because the nature of his interaction with defense counsel did not exceed his authority under Article 6(c), UCMJ.

R.C.M. 705(a) authorizes "an accused and the convening authority [to] enter into a pretrial agreement." Further, the parties may condition the pretrial agreement on a "promise to enter into a stipulation of fact concerning offenses to which a plea of guilty or a confessional stipulation will be entered." R.C.M. 705(c)(2)(A); *see also* R.C.M. 811(a) (Parties are per-

---

[4] The CCA correctly observed that this Court has found an SJA or legal officer to be disqualified in several opinions but that none of the circumstances in those decisions are comparable to the instant case. *See Chandler*, 2020 CCA LEXIS 11, at *14–16, 2020 WL 278401, at *5 (citing *Stefan*, 69 M.J. at 257–58); *United States v. Gutierrez*, 57 M.J. 148, 149 (C.A.A.F. 2002); *United States v. Johnson-Saunders*, 48 M.J. 74, 74–75 (C.A.A.F. 1998) (per curiam); *Edwards*, 45 M.J. at 115–16; *Lynch*, 39 M.J. at 228; *United States v. Rice*, 33 M.J. 451, 452–53 (C.M.A. 1991); *United States v. Engle*, 1 M.J. 387, 389–90 (C.M.A. 1976)).

mitted to make a "stipulation to any fact."). Here, trial counsel inserted into the PTA the provision that Appellant was required to enter into a "reasonable" stipulation of fact. As legal advisor to the convening authority, the SJA was empowered to advise the convening authority regarding whether this condition of the PTA was met. R.C.M. 705(d)(3) Discussion ("The convening authority should consult with the staff judge advocate or trial counsel before acting on an offer to enter into a pretrial agreement."); *see also* Article 6(b), UCMJ ("Convening authorities shall at all times communicate directly with their staff judge advocates or legal officers in matters relating to the administration of military justice.").

Further, the SJA's comments directly related to the substance of the PTA, he included all parties involved, and trial and defense counsel still had the ability to decide how to handle the stipulation at trial and in presentencing proceedings. In light of these circumstances, it was not inappropriate for the SJA to directly inform defense counsel that the SJA would advise the convening authority not to accept the PTA unless Appellant agreed to stipulate to the multiple uses of cocaine and marijuana reflected in Appellant's confession to AFOSI. As the CCA noted, "[w]here a reasonable stipulation of fact is an explicit term of a PTA between the accused and the convening authority, the content of that stipulation directly concerned the SJA in his role as legal advisor to the convening authority." *Chandler*, 2020 CCA LEXIS 11, at *14, 2020 WL 278401, at *5. And as conceded in the CCA dissent, "[c]onvening authorities acting upon the advice of their staff judge advocates may very well determine a pretrial agreement should not be entered into because the stipulation offered by the accused is not reasonable." *Chandler*, 2020 CCA LEXIS 11, *31–32, 2020 WL 278401, at *10 (Key, J., concurring in part and dissenting in part).

Therefore, Appellant's argument is unavailing when he asserts that because stipulations usually become evidentiary exhibits the SJA necessarily acted as trial counsel when he sought Appellant's agreement to stipulate to the confession.

## B. There Was No Legitimate Factual Controversy Between the SJA and Defense Counsel

Appellant's second argument is that a disagreement between defense counsel and the SJA about whether the SJA *insisted* that Appellant agree to stipulate to the multiple instances of drug use acknowledged in Appellant's confession to AFOSI or whether the SJA merely *highlighted options* in regard to resolving an impasse about the PTA negotiations constitutes a legitimate factual controversy. Appellant contends that by failing to recuse himself from the case, the SJA inappropriately put himself in a position where he was reviewing the factual and legal issues that arose due to his own actions.

As this Court has held, "[W]here a legitimate factual controversy exists between the staff judge advocate and the defense counsel, the staff judge advocate must disqualify himself [or herself] from participating in the post-trial recommendation." *Lynch*, 39 M.J. at 228 (citing *United States v. Caritativo*, 37 M.J. 175, 183 (C.M.A. 1993)). However, in the instant case we conclude that the question about whether the SJA insisted on the stipulation or merely highlighted options is not a legitimate factual controversy. Appellant asserted a narrow factual basis as the reason for the SJA to disqualify himself and the Government has always agreed with the underlying point: the SJA was involved in a single phone call where he stated that the stipulation ought to include the information included in Appellant's confession in order for the SJA to recommend approval to the convening authority. Thus, the only point of dispute is the tone of the phone call, and that type of issue does not rise to the level of a legitimate factual controversy.

## C. The SJA's Actions Did Not Reflect a Personal Interest in the Case

Appellant next argues that the SJA's actions reflected a disqualifying personal interest in Appellant's case. According to Appellant, the SJA's actions demonstrated a personal interest because the SJA (1) sought to include information that would increase Appellant's sentence through the stipulation, (2) ignored defense counsel's objection to his post-trial involvement, and (3) failed to reference mitigating factors in his SJAR.

An SJA may be disqualified if he or she has "a personal interest or feeling in the outcome of a particular case." *Sorrell*, 47 M.J. at 433; *see also Rice*, 33 M.J. at 453 (disqualifying a legal officer who testified for the government during sentencing and "had strong personal feelings or biases about appellant" from writing post-trial recommendation). However, we find no indication in the record that the SJA had anything other than an official interest in the instant case. For example, Appellant points to nothing which demonstrates that the SJA had a personal vendetta against Appellant or even had any prior relationship with Appellant.

Further, the fact that the SJA sought the inclusion of Appellant's confession in the stipulation does not demonstrate a personal rather than a professional interest in the case. Although, as Appellant notes, the confession had the potential to increase Appellant's sentence, it also served as a basis for the defense to argue that Appellant deserved sentencing relief because he now was acting with integrity by acknowledging the true extent of his drug usage. (The defense argued that Appellant's admission to 190 uses is a "point of integrity" and that "if we truly value integrity in the Air Force, if we truly set that as our number one priority, he deserves points for that.").

Moreover, the mere fact that the SJA opined on the merits of his own disqualification in the addendum to the SJAR does not itself reflect a personal interest in the case. Just as a military judge must rule on a motion alleging that he or she should be recused, an SJA must determine whether he or she is disqualified.[5] *Compare United States v. Butcher*, 56 M.J. 87, 90–92 (C.A.A.F. 2001) (discussing when military judges *should* disqualify themselves), *with Lynch*, 39 M.J. at 227–28 (describing when SJAs *must* disqualify themselves) (citing *Caritativo*, 37 M.J. at 183)). Standing alone, the mere fact that an SJA is required to respond to an allegation that he or she is disqualified cannot be disqualifying itself, just as every

---

[5] A distinction must be made here. The SJA was not asked to "review . . . [the correctness of his] own pretrial action." R.C.M. 1106(b) Discussion. Rather, the actual issue before the SJA was whether he was disqualified from further advising the convening authority in this case because of the SJA's pretrial actions.

recusal request does not automatically require recusal by a military judge. To rule otherwise would empower parties to unilaterally determine whether a duly competent authority remains eligible to address a legal issue.

Finally, the SJA's omission of mitigating factors in his SJAR does not demonstrate a disqualifying personal interest in the case. SJAs are not required to include mitigating information in their SJARs. *See* R.C.M. 1106(d)(3) (The required contents of an SJAR includes, "setting forth the findings, sentence, and confinement credit to be applied; . . . any recommendation for clemency by the sentencing authority made in conjunction with the announced sentence; and the staff judge advocate's concise recommendation."). Moreover, the SJA similarly did not include any *aggravating* factors in the SJAR. Further, the SJA neutrally recommended that the convening authority approve Appellant's sentence as adjudged. And finally, the SJA properly attached Appellant's petition for clemency and character letters supporting Appellant with the addendum to his SJAR.

In light of these points, we conclude that the SJA's actions—both pretrial and post-trial—do not demonstrate that the SJA had a personal interest in this case.

### D. The SJA's Action Did Not Render Appellant's Post-Trial Proceeding Unfair or Create the Appearance of Unfairness

Finally, Appellant contends that the SJA failed to *appear* neutral and objective and created the *appearance* of unfairness because the SJA (1) did not recuse himself from post-trial processing despite the request from the defense, and (2) remained as the SJA even after defense counsel submitted a clemency package that asserted the SJA's pretrial conduct disqualified him from advising on post-trial matters.

In addressing this point, we first note that Appellant has made no allegation that the stipulation or PTA was unlawful or legally deficient. Moreover, Appellant has not claimed that the SJA's actions precluded him from including any mitigating or extenuating evidence in the PTA. Further, Appellant has not asserted that the SJA's actions prevented him from freely and voluntarily deciding whether to enter into the pretrial agreement, or stopped him from "rolling the dice" and

11

seeing whether the convening authority would approve the PTA even without the catalog of drug usage and without the SJA's acquiescence. In addition, Appellant has not made a credible claim that the SJA's legal advice to the convening authority was wrong or improper. And finally, we note that Appellant received a term of confinement below the cap imposed by the PTA.[6] In light of these circumstances, and in light of the analysis of the disqualification issue reflected above, we conclude that there is no basis to believe that the SJA's actions in this case created an appearance of unfairness.

## V. Conclusion

We hold that under Article 6(c), UCMJ, the SJA was not required to recuse himself from providing the convening authority with post-trial advice in this case.

## VI. Judgment

We affirm the decision of the United States Air Force Court of Criminal Appeals.

---

[6] Appellant's sentence of confinement was one month less than the cap of six months of confinement provided by the PTA.