UNITED STATES, Appellee

v.

WILL HIGHTOWER, JR., Airman Second Class, U. S. Air Force, Appellant

5 USCMA 385, 18 CMR 9

No. 4879

Decided January 7, 1955

Col A. W. Tolen, USAF, and Maj Peter Portrum, USAF, for Appellant.
Lt Col Harold Anderson, USAF, Lt Col Emanuel Lewis, USAF, and Maj Stanley I. Harper, USAF, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was convicted of perjury and subornation of perjury. We granted his petition for review to consider the validity of the post-trial review by the Staff Judge Advocate.

Early in 1953, the accused and one Borden were tried by a special court-martial for attempted larceny of gasoline. At the trial, the accused testified that he had been authorized by an Airman Moye to siphon some gasoline

**386**

from his 1939 Ford automobile. Moye told him where the car was parked. Arriving at the place, he found an automobile of like manufacture. He inserted a hose into the gasoline tank and was about to siphon out some gas when he was interrupted by an air policeman. Investigation disclosed that the automobile was not the 1939 car purportedly belonging to Moye. Instead, it was a 1940 vehicle owned by another person. Moye also testified at the trial. His testimony was substantially to the same effect as that of the accused. Some months later, Moye was tried and convicted for giving perjured testimony at this trial. Contemporaneously, charges were filed against the accused for having suborned Moye, and for falsely testifying at the special court-martial trial.

Captain J. L. Hudson acted as Trial Counsel in the perjury prosecution of Moye. He was also appointed Trial Counsel in the special orders designating the general court-martial before which the accused was brought to trial. The record shows that he was absent at the trial, and that the case was tried by the Assistant Trial Counsel. After the trial, however, Captain Hudson appears as the person who conducted the post-trial review and prepared the formal staff judge advocate's review, in accordance with the provisions of Article 61 of the Uniform Code, 50 USC § 648. The review is signed by him as Assistant Staff Judge Advocate. In it is a parenthetic note regarding his appointment as Trial Counsel. The note states that "at no time did I participate either in the prosecution or preparation for prosecution of this case." Following Captain Hudson's signature is a statement by the Acting Staff Judge Advocate, which reads: "I have read the record of trial. I concur." It is now contended that Captain Hudson was disqualified from conducting the post-trial review and, because of his disqualification, the review is a nullity.

In United States v. Coulter, 3 USCMA 657, 14 CMR 75, we pointed out that, under the provisions of Article 6(c) of the Uniform Code, 50 USC § 556, the person who acts as trial counsel in a case cannot later act as the staff judge advocate in the preparation of the post-trial review. We held that such duality of function constitutes prejudicial error. See also, United States v. Clisson, 5 USCMA 277, 17 CMR 277. Here, Captain Hudson was the appointed Trial Counsel. Although he did not try the case, it may ordinarily be presumed that he entered upon the performance of his regular duties as Trial Counsel immediately after the case was referred for trial. Manual, paragraph 6a, page 10. However, Captain Hudson's review contains a positive statement that he did not in any way participate in the preparation of the case. The statement is presented informally, but no one has contested its truthfulness. Therefore, we are willing to accept Captain Hudson's nonparticipation in this case as an established fact. See United States v. Schuller, 5 USCMA 101, 17 CMR 101. Such acceptance does not dispose of our problem; it removes only one obstacle.

Article 6(c) of the Uniform Code, supra, prohibits the trial counsel from subsequently serving as staff judge advocate in the post-trial proceedings "upon the same case." The Government and the accused sharply disagree on the application of the quoted phrase to the circumstances of this case. The former regards the Moye court-martial and the present trial as separate proceedings. Conversely, the latter contends that the phrase must be liberally construed so as to include all cases arising out of the same transaction, whether these cases are tried separately or in common.

This Court has not had occasion to construe the controverted phrase as it appears in Article 6(c). However, in United States v. Stringer, 4 USCMA 494, 16 CMR 68, we considered Article 27(a), 50 USC § 591, which contains like language. Each of these articles of the Uniform Code prohibits persons who act in one capacity "in any case" from thereafter performing duties in an inconsistent capacity in "the same case." The plain purpose of these provisions is to preclude situations which impair or destroy the fairness and impartiality of the proceedings against

**387**

the accused. Additionally, each Article is directly derived from former Article of War 11, 10 USC § 1482. Hearings before House Committee on Armed Services, 81st Congress, 1st Session, on H.R. 2498, pages 898, 1155. In view of the similarity of purpose and the single source from which derived, we believe that Congress intended to give identical meaning to the phrase, "the same case" which appears in both Articles. See United States v. Best, 4 USCMA 581, 16 CMR 155. Consequently, for guidance we may properly look to the Stringer case and to other cases which have construed the phrase as used in Article 27(a).

A number of Air Force boards of review have held that the phrase "in the same case," as it appears in Article 27(a), must be accorded a liberal construction. Typical is United States v. Homan [ACM 4612], 6 CMR 504. In that case three persons had participated in the larceny and wrongful disposition of the property of a fellow airman. One of the three was tried and convicted by a special court-martial. Later, the defense counsel in that case was appointed, and acted, as trial counsel in the prosecution of the coaccused. Holding that this change in capacity violated the provisions of Article 27(a), the board of review said (page 507):

"... While a narrow construction of the expression 'in the same case' might support the conclusion that the instant situation is not included within the above-quoted provision, neither in the Code nor in the Manual do we find any indication that a narrow construction is necessary, desirable or appropriate."

The board of review below adopted the same broad construction. However, the Government contends that in United States v. Stringer, supra, this Court limited the rationale of these opinions. Although in the Stringer case, the Court was divided in result, there was plain agreement that the phrase must be given a liberal interpretation. The majority opinion distinguished the facts before it from those in United States v. Homan, supra, but it took care to announce agreement with Homan in that particular. Thus, it said:

"... Indeed, we wholly agree with the view expressed in that case to the effect that a narrow construction of the phrase 'in the same case' would subvert the manifest intent of the statute."

With the scope of the statute established, we turn to the facts of this case. Moye and the accused were charged with giving false testimony at the same judicial proceedings and with regard to the same material facts. True, the accused was also charged with subornation of perjury, but since the suborned testimony is Moye's, this offense only emphasizes the common nature of the charges. In essence, therefore, the subornation charge is inseparable from the perjury charge. See: United States v. Silverman, 106 F2d 750 (CA 3d Cir 1939).

Realistically then, the accused and Moye were coaccused, tried separately for the same offense. Moye was convicted. Captain Hudson was the successful Trial Counsel. Having so acted, would he acquire a "frame of reference" which would improperly influence him in a review of the accused's case? See United States v. Stringer, supra, page 503. The Government maintains that he would not. It contends that one of the fundamental qualities of the legal profession is a highly refined capacity to exercise objectivity and judicial discipline. We are quite willing to accord this quality to most members of the profession, but we believe that an impartial observer would conclude that personal convictions formed in the prosecution of one accused would tend to influence the prosecutor in his relations with the coaccused.

We have no doubt that Captain Hudson, having been instrumental in convicting Moye, would be personally convinced of the accused's guilt. Since the conviction is founded on personal experiences, it would certainly be more deep-seated than an opinion formed only on the basis of an official evaluation of the record. A fixed opinion of this kind manifestly affects the impartiality of the review. One consequence of it is to deny the accused the benefit of any doubt regarding the correctness of rulings by the law officer. See United

States v. Floyd, 2 USCMA 183, 188, 7 CMR 59. A second consequence is the sentence phase of the review. There is a distinct risk that the sentence recommendation would reflect unrecorded prejudices formed during the reviewer's prosecution of the coaccused. See United States v. Bound, 1 USCMA 224, 2 CMR 130. Thus, since the charges are alike and there is a substantial basis for "overzealous prosecution," we believe that the Moye case and the present proceeding constitute the "same case" within the meaning of Article 6(c).

Of course, in reaching our conclusion, we do not imply that Captain Hudson intentionally deprived the accused of an unbiased review. On the contrary, we are sure that he was honest and sincere in his belief that he could act dispassionately. Moreover, Congress intended to remove all possibility of bias; it did not contemplate ferreting for motives and delicate balancing of previous influences against objective fairness. Cf. United States v. Dean, 5 USCMA 44, 17 CMR 44. We must insist on adherence to the Congressional policy directed against conduct tending to impair the impartiality of the post-trial review.

One final point urged by the Government requires consideration. The Government contends that inasmuch as Captain Hudson prepared the report as Assistant Staff Judge Advocate, he was, essentially, only an amanuensis for the Staff Judge Advocate. The latter had no previous connection with either case, and, consequently, there is no violation of Article 6(c). This argument was adopted by the board of review below. However, some months after publication of the opinion by the board of review, this Court decided United States v. Crunk, 4 USCMA 290, 15 CMR 290. In that case, the person who had acted as law officer at the trial later prepared the post-trial review, in conjunction with a civilian attorney. There, as here, the staff judge advocate noted that he concurred in the opinions and recommendations of the reviewers. In a unanimous opinion, we held such conduct to be prohibited by Article 6(c). After pointing out that "mere concur-

rence" did not show compliance with the Code requirement for an impartial review by the staff judge advocate, we said:

"... Aside from that, the Article is intended to prevent a participant at the trial level from influencing the action of the convening authority, and it would be platitudinous reasoning for us to reach a conclusion that the disqualified officer did not assist in inducing the approval of the findings and sentence."

Here, as in United States v. Clisson, supra, the question arises as to what corrective action should be taken. At the trial the accused specifically admitted his guilt of the perjury charge. And, although he attempted to implicate his counsel as originator of the scheme to induce Moye to commit perjury, he also conceded his knowledge of the plan and his participation in a number of conferences with Moye in which the matter of Moye's false testimony was discussed. Under these circumstances, no useful purpose will be served by ordering a rehearing. Cf. United States v. Coulter, supra. Therefore, we reverse the decision of the board of review and return the case to the convening authority. We order that in accordance with Article 61 of the Uniform Code, 50 USC § 648, the record be referred to a qualified staff judge advocate who has had no previous connection with the case, and who will review the record with the impartiality and fairness required by the Uniform Code.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

This case involves a variation from the principles set out in United States v. Coulter, 3 USCMA 657, 14 CMR 75; United States v. Crunk, 4 USCMA 290, 15 CMR 290; and United States v. Clisson, 5 USCMA 277, 17 CMR 277. However, the facts bring it more nearly within the scope of United States v. Crunk, supra, for the reason that the reviewing officer reviewed the entire

record for the purpose of ferreting out any legal errors that might have been committed during the course of the litigation. When that situation confronts us, we have the disqualified officer placing his stamp of approval on his own trial craft, and under those circumstances there might be good reason to grant a rehearing. Here the necessity for that action is avoided by reason of the fact that the accused judicially admitted his commission of both offenses. When considered in the light of his own confessions of guilt from the witness stand, it would be ridiculous to grant him a rehearing on the issue of guilt or innocence.

I have dissented in the previous cases involving only post-trial clemency reviews by officers who might fall within an excluded class. I now accept as the law of this Court the principles announced by my associates in those instances. However, I call attention to the peculiar facts and circumstances of this case, and I point out the futility of requiring a new staff judge advocate's review on the sentence. Here, as in Clisson, we find the sentence subject to attack because the post-trial clemency interviewing officer was trial counsel. But here, unlike as in Clisson, the officer who conducted the clemency interview was not the trial counsel in this case or in the affiliated case. It might be of some importance to a proper disposition of this case to weigh the fact that Captain Hudson did not interview the accused or furnish the foundation for the convening authority's action. In this instance, the interview was conducted, and a report furnished, by an officer who did not try either this or the allied case. I quote from that portion of Captain Hudson's review which deals with clemency:

"The distance between this headquarters and the place of confinement of the accused is such as to prohibit a personal interview by this reviewer and consequently the report of the interview conducted by the Staff Judge Advocate of the accused's organization is incorporated herein."

Then there follows, in the Captain's Staff Judge Advocate's review, seven paragraphs of information quoted from the report of the actual clemency interviewing officer. I quote the latter's conclusion:

"The interviewer sees no reason why the dishonorable discharge should not be executed."

The Staff Judge Advocate merely echoed those sentiments, and I am not surprised, as there was no other action that any reasonable person would take. The accused had been convicted of serious offenses which permitted the court-martial to impose a sentence of confinement for ten years, a dishonorable discharge, and total forfeitures. The court-martial imposed only a sentence of one year in confinement, dishonorable discharge, and accessories. Without powerful extenuating facts and circumstances, or without some evidence that the accused was the indispensable man, any reviewing officer worth his assignment would not recommend the modification of that sentence. It would take only a peek at this record to find a total absence of any reasons for clemency. Moreover, a convening authority is required to exercise his own independent judgment and in the light of these offenses and the lack of extenuating factors, he could hardly be influenced by a recommendation for leniency. I venture to suggest that every officer who has studied this record, and who had power to influence a sentence, reached an independent conclusion that the sentence as imposed should be executed.

For the reasons I have advanced, I conclude that it is an act of sheer futility to return the cause to a convening authority for review by a disinterested staff judge advocate. Without interest on his part, the recommendation will be the same as the one rendered by the first disinterested interviewer.