## UNITED STATES

v.

Sergeant Armando C. MARKLAND, FR 104–42–5855 24th Supply Squadron USAF Southern Air Division (TAC).

ACM 22124.

U. S. Air Force Court of Military Review.

Sentence Adjudged 28 June 1976.

Decided 18 Jan. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Marc G. Denkinger, USAFR.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Gilbert J. Regan.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

EARLY, Senior Judge:

Tried by general court-martial, military judge alone the accused was convicted, pursuant to his pleas, of robbery and resisting apprehension, in violation of Articles 122 and 95, Uniform Code of Military Justice, 10 U.S.C. §§ 922, 895. The approved sentence extends to a bad conduct discharge, forfeiture of $100.00 per month for ten months, confinement at hard labor for ten months and reduction to airman basic.

Appellate defense counsel assign one error:

THE PREPARER OF THE CLEMENCY EVALUATION REPORT WAS DISQUALIFIED BY ARTICLE 6(c), UNIFORM CODE OF MILITARY JUSTICE, AND PARAGRAPH 85a, MANUAL FOR COURTS–MARTIAL, 1969 (REVISED EDITION).

The clemency evaluator and author of the post-trial review was Captain Dekat, whose only connection with the case was as staff judge advocate to the special court-martial convening authority.[1] This fact was recited to the accused in the preamble to the clemency report, to which the accused submitted no matters in denial, explanation or rebuttal.

■ However, in his response pursuant to the mandate in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), the trial defense counsel wrote:

2. I wish to note an objection to the participation of Capt Dekat as a reviewer of this case especially regarding the clemency. I feel that by virtue of his position as Staff Judge Advocate of the 24 Combat Support Group, he cannot function as an impartial observer pursuant to AFM 111–1, paragraph 7–5(b)(3).

3. It is inconceivable to me that the Staff Judge Advocate of the 24 CSG, Capt Dekat, could not have been involved in the advisory process which led to the referral of charges against Sgt Markland and the subsequent convening of a general court-martial. I do know that he had several conversations with Capt Dekat regarding a negotiated plea in the case of

---

1. In this role Captain Dekat had recommended disapproval of the accused's request for administrative discharge in lieu of court-martial on the ground that the accused had potential for rehabilitation and restoration to duty.

*US v. Silvestre.* Capt Dekat communicated my messages to the USAFSO/JA. Moreover, the Assistant Defense Counsel, Capt Hood, who left the Air Force on 30 June 1976, advised me via a message left in his office prior to my arrival in Panama, that he had discussed a negotiated plea regarding Sgt Markland with Capt Dekat four days prior to my arrival.[2]

In essence, then, the issue presented is whether Captain Dekat, because of his position as staff judge advocate to the special court-martial convening authority, and, because he participated to some extent in an apparently, aborted negotiated plea attempt is disqualified to act as clemency evaluator and as author of the post-trial review of the staff judge advocate to the general court-martial convening authority.

The Code provides:

No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing (convening) authority upon the same case.

Article 6(c), Code, *supra*; paragraph 85(a), Manual for Courts-Martial, *supra*.

"The plain purpose of these provisions is to preclude situations which impair or destroy the fairness and impartiality of the proceedings against the accused." *United States v. Hightower,* 5 U.S.C.M.A. 385, 18 C.M.R. 9, 11–12 (1955). The Code provisions do not restrict staff judge advocates, whether assigned to the convening or reviewing authority's office, from later acting as staff judge advocate to the reviewing authority. Hence, there is no disqualification of the holder of either office simply

because of his pretrial functions of reviewing the evidence, writing the pretrial advice or even advising the trial counsel. See *United States v. Haimson,* 5 U.S.C.M.A. 208, 17 C.M.R. 208 (1954); *United States v. Mallicote,* 13 U.S.C.M.A. 374, 32 C.M.R. 374 (1962). As was held in *Mallicote, supra,* at 377:

The staff judge advocate is peculiarly vulnerable in such a potential conflict of interest. Because of his position as administrator of military justice and discipline and as legal advisor to the command to which he is attached, his services are available to all. He must act in an independent and impartial capacity and does not represent only the Government. In the preliminary investigating stage, he is an impartial advisor to both the Government and the accused.

\* \* \* \* \* \*

The very nature of these obligations makes the issue [of conflict] paramount. However, since the pretrial advice of the staff judge advocate submitted in compliance with Article 34(a) of the Code, *supra,* minimizes the risk of error arising from faulty pretrial investigations and appreciably reduces the preference of ill-founded charges against those subject to military law, the risk of overstepping the bounds of impartiality on later review is justifiable.

Nevertheless, "[i]n the exercise of these separate functions the Staff Judge Advocate must use his intelligence and experience to keep from becoming at one stage of the proceedings so personally involved in the outcome as to preclude him from acting in a later stage." *United States v. Gunnels,* 8 U.S.C.M.A. 130, 23 C.M.R. 354, 358 (1957).

---

2. Unfortunately this case is complicated by the unexplained failure of the staff judge advocate to comment on the defense counsel's response. At the very least some explanation should have been provided to the convening authority on this point prior to his action. We strongly recommend that such challenges by the defense counsel not go unnoticed by the staff judge advocate since such a procedure leaves the convening authority with conflicting advice and without guidance as to the action he should take. See my concurring opinion in *United States v. Hardesty,* 51 C.M.R. 784, 786, 1 M.J. 780, 781 (A.F.C.M.R.1976). Here, we assume that the defense counsel's remarks were forwarded with the review to the convening authority.

Here we find nothing in the allegations of Captain Dekat's pretrial participation that would be disqualifying to his later reviewing function. The fact that the accused pleaded guilty certainly lessened any possibility of partiality on Captain Dekat's part as to findings. We therefore hold that his position of staff judge advocate to the inferior convening authority and his administrative actions in referring the case to trial were not a bar to his later acting as reviewer.[3]

█ Turning now to Captain Dekat's functioning as the clemency evaluator, the general rule is that the clemency report must be prepared by a "completely impartial person, . . . someone not previously involved in the case." [4] *United States v. Nees*, 18 U.S.C.M.A. 29, 39 C.M.R. 29, 33 (1968). We have previously held that the fact that the special court-martial staff judge advocate conducted the post-trial clemency interview and wrote the clemency report was entirely proper *in the absence of some other disqualifying circumstance*. *United States v. King*, 40 C.M.R. 1030 (A.F. B.R.1969), pet. denied, 40 C.M.R. 327 (1969); *United States v. Hedrington*, 47 C.M.R. 984 (A.F.C.M.R.1973). Thus, for example, had Captain Dekat's activities been such as to constitute him a de facto trial counsel, preparation of the clemency report would have been prejudicially erroneous. *United States v. Coulter*, 3 U.S.C.M.A. 657, 14 C.M.R. 75 (1954); *United States v. Metz*, 16 U.S.C.M.A. 140, 36 C.M.R. 296 (1966); *United States v. McCoy*, 43 C.M.R. 918 (A.F.C.M. R.1970).

In *Hedrington, supra,* the staff judge advocate reviewed the investigatory reports, discussed the case with the unit and inter-

mediate commanders, drafted the charges and specifications, advised the convening authority (special court-martial),[5] and carried out the other administrative duties common to all trials by courts-martial. "In none of these functions did he become an investigating officer, an accuser, or become partisan on either side." Id. at 987. Here, the only specific allegation against Captain Dekat was that he "discussed a negotiated plea" with the assistant defense counsel. There is no indication in the record or allied papers that this discussion ever went beyond the point of preliminary discussion. However, even if it did, we do not find this, in and of itself, to be disqualifying.

In the Air Force, unlike the civilian practice, the negotiations for a guilty plea are between the accused and his counsel and the convening authority. When such an offer is received by the staff judge advocate, he must advise the convening authority of the Air Force policy discouraging such agreements, any factors warranting an exception to said policy, the legal and evidentiary points involved, and, he must offer his advice as to the disposition of the offer. A written offer *can* be *rejected only* by *the convening authority*. If the convening authority desires to authorize negotiations, he must request permission from the Judge Advocate General.[6] Thus, it is clear that the negotiations are between the accused and the convening authority, and that the staff judge advocate and his assistants are merely advisors in the process. This is not the prosecutorial activity that would transform the staff judge advocate into an adjunct trial counsel or otherwise destroy his ability to maintain an impartial role, no more than it would the convening authority

---

**3.** Had we found that Captain Dekat was disqualified by virtue of his pretrial activities, the fact that the review was adopted and concurred in by the staff judge advocate would not have been curative. See *United States v. Hardy*, 11 U.S.C.M.A. 521, 29 C.M.R. 337 (1960); *United States v. Hightower*, 5 U.S.C.M.A. 385, 18 C.M.R. 9 (1955).

**4.** See *United States v. Marsh*, 20 U.S.C.M.A. 42, 42 C.M.R. 234 (1970), in which the fact that

the Article 32 investigating officer prepared the post-trial clemency report was considered "improper" but not prejudicially erroneous.

**5.** Hedrington was tried by special court-martial.

**6.** See Air Force Manual 111–1, Military Justice Guide, 25 August 1975, paragraph 4–9f.

himself. We find no "reasonable expectation that because the staff judge advocate has determined various issues against the accused in the pretrial stage of the proceedings, he will be unalterably resolved in his later review to adhere to his earlier findings and recommendations as an 'accolade' for his earlier efforts." *United States v. Engle*, 24 U.S.C.M.A. 213, 51 C.M.R. 510, 512, 1 M.J. 387, 389 (1976).

We have examined the post-trial review and clemency report prepared by Captain Dekat and find no overt indication of any bias toward the accused; to the contrary, they indicate a balanced approach toward both the findings and the sentence. Captain Dekat recommended that the findings be approved, but that the accused be sent to rehabilitation training. The accused was advised in the preamble to the clemency report that Captain Dekat had served as staff judge advocate to the special court-martial convening authority, and we can assume he was aware his counsel had discussed a negotiated plea with this officer.

Accordingly, on the basis of the record as a whole we find no disqualifying activities that would have prevented Captain Dekat from writing the post-trial review or clemency report.

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.