UNITED STATES

v.

Staff Sergeant Harry L. STORMS, FR 444–50–4866, 416th Security Police Squadron, Eighth Air Force (SAC).

ACM 22255.

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 May 1977.

Decided 27 Oct. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Lieutenant Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before EARLY, FORAY and HERMAN, Appellate Military Judges.

DECISION

EARLY, Chief Judge:

Tried by general court-martial, military judge alone, the accused was convicted, despite his pleas, of taking indecent liberties with a female under the age of 16 years, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence extends to a dishonorable discharge, confinement at hard labor for one year and reduction to airman basic.

Appellate defense counsel assign four errors for our consideration. In the first, they assert:

THE COMPLAINING WITNESS WAS NEITHER SWORN NOR AFFIRMED WHEN SHE TESTIFIED AT TRIAL.

We disagree.

The complaining witness, Jennifer K., a seven year old girl, testified at both an Article 39(a), Code, supra, session and on the merits. Prior to her testimony during the case in chief, the following dialogue ensued:

> TC: Jenny, I am going to ask you one more time. Do you promise to tell me the truth?
>
> WIT: Yes.
>
> TC: The whole truth?
>
> WIT: Yes.
>
> TC: Nothing but the truth?
>
> WIT: Yes.
>
> TC: You aren't going to tell me any lies, are you?
>
> WIT: No.
>
> TC: You aren't going to tell Captain Marek or Captain Starling [defense and assistant defense counsel] any lies?
>
> WIT: No.
>
> TC: You aren't going to tell the Judge any lies?
>
> WIT: No.
>
> DC: The defense will state it's objection that the witness did not take an oath or affirmation, that the witness must be sworn in accordance with the manual. She has to raise her right hand or place her hand on the bible.
>
> MJ: I think her promise is tantamount to that and your objection is overruled. Jenny, please tell the truth in here do you understand that?
>
> WIT: Yes.

The Manual for Courts-Martial, 1969 (Rev.), provides that each witness before a court-martial shall be examined under oath. Manual, supra, at paragraph 112b. The oath form for witnesses is:

> You swear (or affirm) that the evidence you shall give in the case now in hearing shall be the truth, the whole truth, and nothing but the truth. So help you God.

Id. at paragraph 114f. In the administration of an affirmation, the reference to the Deity is omitted. Id. at paragraph 112.

In *United States v. Slozes*, 1 U.S.C.M.A. 47, 1 C.M.R. 47 (1951), the Court, in interpreting similar language contained in the Manual for Court-Martial, 1949, held that a verbatim recital of the oath form was not necessary so long as the procedure followed served to solemnly remind the witness of his special obligation to tell the truth. The Court also cited with approval language from *Williams v. United States*, 3 App.D.C. 335, 341 (1894):

> A child does understand the nature of an oath in the proper sense of the term, even though she may not know the meaning of the word oath, and may never have heard the word used.

In the instant case, Jennifer promised to "tell . . . the truth, . . . the whole truth, . . . [and] nothing but the truth . . . ." She also promised not to tell any lies to any of the trial participants.[1] Since it had earlier been determined that Jennifer did not have any particular belief in, or even knowledge of, the Deity, we can see no purpose of adding, what to Jennifer, would have been meaningless language to the oath. We therefore hold that, under the circumstances of this case, that the witness was properly sworn.[2]

In their second assignment, appellate defense counsel assert:

---

1. The facts in *United States v. Baranowski*, 26 C.M.R. 636 (A.B.R.1958) are distinguishable from those here. There the "oath" consisted merely of the question: "Will you tell me the truth now?" The ratio decidendi of *Baranowski* as to this issue is not clear, but the difference in "oath" there and here is readily apparent. While the question posed there does go to the ultimate issue, it is the *compulsion* to testify truthfully that must be established.

2. We do not believe in situations of this sort, involving young children, that strict adherence to the exact words of the oath would necessarily guarantee any additional verity. It is obvious that the child would not be any more reminded of her "special obligation to tell the truth" by words which, she admitted, she did not understand.

THE COMPLAINING WITNESS WAS INCOMPETENT TO TESTIFY AT TRIAL.

We disagree.

The competency of children as witnesses is a difficult issue to resolve, particularly at appellate level. As was said in *Wheeler v. United States*, 159 U.S. 523, 525, 16 S.Ct. 93, 93, 40 L.Ed. 244 (1895):

> As many of these matters (competency of a child witness) cannot be photographed into the record, the decision of the trial judge will not be disturbed on review unless from that which is preserved it is clear that it was erroneous.

■ The general rule is that the competency of a person under the age of 14 cannot be presumed, Manual for Courts-Martial, supra, at paragraph 148c, but must be established on the record before she is allowed to testify. The test to be applied is that a child of any age must know the difference between truth and falsehood, understand the moral importance of telling the truth and be sufficiently intelligent to observe, recollect and describe with reasonable accuracy the facts in question. Ibid.; see also *United States v. Slozes*, supra. It is well settled that it is the duty of the trial court "to ascertain whether the infant is competent to be a witness, rather than that of an appellate tribunal with only the record of trial before it." *United States v. Slozes*, supra, at 54; see also *United States v. Nelson*, 39 C.M.R. 947 (A.F.B.R.1968), pet. denied, 39 C.M.R. 293 (1969).

■ Here an extensive examination of Jennifer was conducted by both counsel and the military judge both at the pretrial hearing [3] and during the trial itself. While certain inconsistencies developed during examination by respective counsel, we find the testimony of Jennifer as to the essential facts in issue to be remarkably consistent, particularly in view of her age (7 at the time of testifying), and the span of time separating the event and the trial.[4] The decision as to her competency is peculiarly, and, rightfully, that of the trial judge. Our examination of the record discloses nothing to indicate an abuse of his discretion or any mistake of law. *United States v. Slozes*, supra; *United States v. Nelson*, supra; *United States v. Hurt*, 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958).

In their third assignment of error appellant defense counsel assert:

THE BASE STAFF JUDGE ADVOCATE WAS NOT A PROPER PERSON TO CONDUCT THE POST–TRIAL CLEMENCY INTERVIEW.

We disagree.

■ This issue is resolved by our decision in *United States v. Markland*, 54 C.M.R. 1011, 2 M.J. 356 (A.F.C.M.R.1977), pet. granted, 3 M.J. 424 (1977), grant vacated and denied, 3 M.J. 464 (8 September 1977), wherein we held that, in the absence of some other disqualifying circumstances, it was proper for the base staff judge advocate to conduct the post-trial clemency interview. See also *United States v. King*, 40 C.M.R. 1030 (A.F.B.R.1969), pet. denied, 40 C.M.R. 327 (1969); *United States v. Hedrington*, 47 C.M.R. 984 (A.F.C.M.R.1973). Here our examination of the record and the allied papers reveals no such disqualifying circumstances.

In their final assignment of error appellate defense counsel assert:

THE APPELLANT WAS IMPROPERLY DENIED THE RIGHT TO HAVE COUNSEL PRESENT DURING THE POST–TRIAL CLEMENCY INTERVIEW.

We disagree.[5]

■ Neither the Uniform Code nor the Manual for Courts-Martial, 1969 (Rev.) spe-

---

3. An Article 39(a), Code, supra, hearing was conducted prior to the time the accused elected to proceed by judge alone.

4. Although the date of the crime was not specifically established, some 8 to ten months elapsed prior to trial.

5. This issue is now pending before the Court of Military Appeals. See *United States v. Hill*, 2 M.J. 289 (A.F.C.M.R. 14 Sept. 1976), pet. granted, 54 C.M.R. 596, 2 M.J. 201 (12 Jan. 1977); *United States v. Huson* (unpublished) (A.F.C.M.R. 18 Feb. 1977), pet. granted, 3 M.J. 267 (1977).

cifically mentions the post-trial clemency interview. The latter does state:

> The sentence approved should be that which is warranted by the circumstances of the offense and the previous record of the accused. Appropriate action should be taken to approve a less severe sentence when the sentence, though legal, appears unnecessarily severe. In approving sentences, consideration should be given to all factors, including the possibility of rehabilitation as well as the possible deterrent effect.
>
>     \*    \*    \*    \*    \*    \*
>
> The convening authority should consider as a basis for approving only a part of a legal sentence all matters relating to clemency, such as long confinement pending trial.

Manual, supra, at paragraph 88b.

In order to supply the convening and reviewing authorities with sufficient information to properly evaluate the appropriateness of a sentence, the Air Force has, by Air Force Manual 111–1, Military Justice Guide, paragraph 7–5 (2 July 1973), provided for a clemency evaluation in general court-martials and each special court-martial where a bad conduct discharge has been adjudged or where the accused will be confined at the 3320th Correction and Rehabilitation Group or the United States Disciplinary Barracks. In the aforementioned paragraph the general procedures and format for the clemency evaluation are listed. At no place is the accused given the right to have counsel during the clemency interview.

It is clear that there is no statute, executive order or regulation which gives the accused a right to counsel during the clemency process except to the extent that he may have assistance of counsel in preparing his comments or rebuttal to matters contained therein. See AFR 111–1, supra, at paragraph 7–5g.

Our sister services have considered this same issue and found no right to counsel exists during the clemency evaluation. In *United States v. Canady*, 34 C.M.R. 709, 713 (N.B.R.1964), a Navy Board of Review held that:

> [T]here is no requirement in military law for mandatory representation by counsel at a post-trial interview. In some respects, the post-trial interview may be compared with the presentence investigation and report of the probation officer in a civil criminal proceeding. When the probation officer interviews the defendant, the accused is not represented by counsel.

Following this decision, an Army Board of Review held:

> Not only do we perceive no legal requirement for presence of counsel at this stage of the proceedings but, by way of dictum, we note that presence of counsel at such an interview might well inhibit a full, free and frank discussion between the accused and the interviewer which could result in a favorable recommendation for clemency.

*United States v. Boheman*, 39 C.M.R. 301, 304 (A.B.R.1968).

Appellate defense counsel urge that the holding in *United States v. Palenius*, 25 U.S.C.M.A. 222 (Interim), 54 C.M.R. 549, 2 M.J. 86 (1977) mandates the presence of counsel during the clemency interview. However, we find nothing in the *Palenius* holding that would support such a contention. In fact *Palenius* seems to approve of the present procedure:

> Additionally, he (trial defense counsel) should take action on behalf of his client as necessary during the intermediate reviews contemplated by the Uniform Code of Military Justice. . . . This includes the *reviewing* of the staff judge advocate's report with his client and the presentation of pleas to the convening authority for modification or reduction of sentence if in his or his client's judgment such is appropriate or desirable. (Emphasis added, footnote omitted.)

54 C.M.R. (Interim) at 557–8, 2 M.J. at 93.

There are various and cogent reasons for not having counsel present with the accused during the clemency interview. The presence of counsel might well dampen the atmosphere of the interview by interposing a third party between the accused and the interviewing officer. For example, the accused would be better situated to complain

of some deficiencies in representation if his counsel was not present. Here, the accused was fully advised of his rights against self-incrimination prior to the interview, and, of course, he was accorded the right to comment on, or rebut with advice of counsel, anything in the interview. See *United States v. Vara*, 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958).

We prefer to align ourselves with the holdings and rationale of our sister services. Neither law nor logic demands that the accused be given the right to counsel at what, at least to this point in time, has not been considered an adversary proceeding. The clemency evaluation can only benefit the accused since the upward level of sentence is already fixed. *United States v. Boheman*, supra; *United States v. Coulter*, 3 U.S.C.M.A. 657, 14 C.M.R. 75 (1954). We think that on balance the clemency interview would more likely be hampered than improved by the presence of counsel with the accused. Accordingly, we hold that no right to counsel exists at the clemency interview.

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Judge, concurs.

HERMAN, Judge, absent.