UNITED STATES, Appellee,

v.

Ronald COLLINS, Airman First Class,
U.S. Air Force, Appellant.

No. 34,322.

ACM 22169.

U. S. Court of Military Appeals.

March 26, 1979.

Appearances: For Appellant—*Lieutenant Colonel Larry G. Stephens* (argued); *Colonel Robert W. Norris* (on brief).

For Appellee—*Major Gilbert J. Regan* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

### Opinion of the Court

FLETCHER, Chief Judge:

Airman First Class Ronald Collins was convicted of selling lysergic acid diethylamide (LSD), and communicating a threat.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of $200 pay per month for 12 months and reduction to Airman Basic.

We granted two issues in this case, the first one being:

WHETHER THE STAFF JUDGE ADVOCATE ERRED IN PREPARING THE POST–TRIAL ADVICE WHEN THE PRETRIAL ADVICE PREPARED BY HIM WAS CHALLENGED AT TRIAL.

Proper examination of this issue requires us to review the trial judge's denial of the defense challenge of the pretrial advice for a determination of abuse of discretion. In alleging a material misrepresentation in the staff judge advocate's pretrial advice, the defense counsel pointed to the following advice to the convening authority: "The accused then stated that he would have the microdot acid at barracks 838 after 1300 and that Airman Meyer could get it from 'that guy', the one with the 'blue stocking cap.'" On the basis of this sentence the appellant claimed the advice posited the accused as an active participant, selling the drug. This quotation, however, must be read in conjunction with the staff judge advocate's concluding paragraph:

Although the accused was not physically present at the time of the sale, his involvement prior thereto was extensive. He determined the date, time, place, and price. He arranged to have the drugs available for sale. One who counsels, commands, or procures another to commit an offense subsequently perpetrated in consequence of that counsel, command, or procuring, is a principal whether he is present or absent at the commission of the offense.

The pretrial advice also included a nearly verbatim quote from witness Meyer, who had testified:

He wanted me to come over by his house—Airman Collins did—and I told him I didn't know where he lived and he says well, he would have the microdot acid over at barracks 838 at one o'clock, after one o'clock, where, at which time he pointed out that Airman Jones, as he pointed to him, Jones here, or a nickname, I don't remember what it was, he said he would have the microdot acid at that time and I could purchase it.

Nevertheless, the accused now contends that the issue granted is resolved in his favor by the decision of this Court in *United States v. Engle,* 1 M.J. 387 (C.M.A.1976). We disagree.[2]

In *Engle,* the Court stated that "[i]n the usual case, preparation of the pretrial advice does not disqualify a staff judge advocate from participation in the post-trial review." *Id.* at 389. What, then, constitutes the unusual case? Where the pretrial adviser misstates a material fact, omits a material fact, arrives at an erroneous factual conclusion, or makes a misstatement of law material to the convening authority's resolution, he is disqualified as the post-trial reviewer. Stated differently, the proper standard requires that if the pretrial advice is correct in all material aspects, both those of fact and law, then the drafter is not disqualified to act as the post-trial reviewer. In consideration of minimal factors which disqualify the staff judge advocate from post-trial review, we noted in *Engle*

---

1. A violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively.

2. We are constrained to reject an interpretation of *United States v. Engle,* 1 M.J. 387 (C.M.A. 1976), that would, in effect, grant the accused the absolute right to disqualify the staff judge

advocate. Our criticism of this position is similar to certain criticism levied against trial judge recusal. *See* ABA Standards, The Function of the Trial Judge, Commentary on Standard 1.7 (1972). *Cf. United States v. Hodges,* 22 U.S.C. M.A. 506, 47 C.M.R. 923 (1973).

that, in addition to Article 6(c) of the Code, 10 U.S.C. § 806, his conduct "may be so antithetical to the integrity of the military justice system as to disqualify him from participation." *Id.* We further cited from *United States v. Crunk,* 4 U.S.C.M.A. 290, 293, 15 C.M.R. 290, 293 (1954), that codal provisions by their very nature were "to assure the accused a thoroughly fair and impartial review."

 As we examine the whole pretrial review, we find that the challenged statement of the staff judge advocate and the review itself are not materially incorrect; the purported error here was not so great as to be materially prejudicial to the gravamen of the offense charged so as to disqualify the staff judge advocate from preparing the post-trial review.[3]

The second question to be resolved is stated in the following manner:

WHETHER THE APPELLANT WAS DENIED AN ARTICLE 32 INVESTIGATION BY AN IMPARTIAL INVESTIGATING OFFICER.

This assignation of error arose from alleged improprieties at an Article 32, 10 U.S.C. § 832 hearing concerned with the charge of selling LSD. During the hearing, it was reported to the Article 32 judicial officer by the court reporter that the accused was making threats against a witness. The following stipulation of the testimony was admitted at trial and concerns the statements of the Article 32 judicial officer at the time he admonished the accused:

Questions by defense counsel of Lieutenant Colonel Castberg (the Investigating Officer):

Q: What action did you take upon being informed by Mrs. Daly that she believed that she had witnessed a threat?

A: I believe I told Airman Collins' defense counsel that if his client made any more threats, additional action could be taken against him.

Q: Could you have specifically said, "If your client makes any more threats, I will prefer court-martial charges against him"?

A: I could have made that particular statement.

Q: Did you believe at the time Mrs. Daly talked to you that Airman Collins had made a threat?

A: I did believe that a threat had been made because I believed what Mrs. Daly told me.

After the conclusion of the original pretrial investigation, the investigating officer was subsequently directed to hold a second investigation of the alleged communication of a threat.

 The obligation of a judicial person to regulate matters before him cannot be doubted if a fair and impartial hearing is to be held.[4] The Standards Relating to the Administration of Criminal Justice, as compiled by the American Bar Association regarding the Function of the Trial Judge,

---

3. The initial demonstration of the propriety of a post-trial review by the challenged staff judge advocate is the result reached by the military judge on the pretrial advice motion. *Cf. United States v. Engle, supra.* The trial judge should specifically enter special findings on the motion. The alleged pretrial advice deficiency might, for example, be immaterial—as in the case *sub judice,* frivolous. Likewise, a material deficiency, considered from the point in time of the judge's ruling, might not be prejudicial. Those and similar considerations of the trial judges, if contained in the record of trial, would clearly delineate the Staff Judge Advocate's disqualification to impartially review the record after trial.

4. We agree with the government's assertion that to require an investigating officer's recusal whenever knowledge of some potential misconduct by an accused is thrust upon him is to establish a rule subject to abuse. As we have stated, there is no showing here of partiality of investigation nor had the investigating officer become an accuser. *Cf. United States v. Lopey,* 20 U.S.C.M.A. 76, 42 C.M.R. 268 (1970); *United States v. Burkhalter,* 17 U.S.C.M.A. 266, 38 C.M.R. 64 (1967). We do not believe that the prohibition against an investigative officer's being an accuser or a prospective military judge, prosecutor or defense counsel incapacitates the investigative officer in this quasi-judicial capacity. *See* Paragraph 34a, Manual for Courts-Martial, United States, 1969 (Revised edition).

provide proper guidelines for any person acting in a judicial capacity or quasi-judicial capacity. Without fully reiterating all the General Standards relating to the judicial person's obligations, we regard the duty to protect the witness [5] and the duty to maintain order [6] as pertinent to the facts of this case.

Moreover, there is a proper analogous guideline under the standard provided for the use of contempt power, particularly in subsection (ii), implementation of admonition and warning:

> No sanction other than censure should be imposed by the trial judge unless
>
> (i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or
>
> (ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

ABA Standards, The Function of Trial Judge § 7.2 (1972).

■ A proper warning issues clear notice to an offender that the conduct is impermissible and specified sanctions may be imposed for its repetition. The stipulation introduced at trial shows that the Article 32 investigating officer correctly followed this procedure, and he well might have proceeded with a contempt hearing had he those powers. We observe parenthetically that this standard and the one that follows concern criminal contempt, an offense which may be followed with incarceration.

The Standards further provide:

> [T]he judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to another judge if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or

his objectivity can reasonably be questioned.

*Id.* at § 7.5.

Nothing in the stipulated colloquy indicates that this judicial officer's "conduct was so integrated" with the actions of the accused "that he contributed to it or was otherwise involved." The direct application of this standard is, of course, to a trial judge who continually makes rulings and issues instructions which directly affect the guilt or innocence of the accused. But, by analogy, no higher standard should govern the actions of an investigative judicial officer charged with the obligation to inquire "as to the truth of the matter set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline." [7]

Furthermore, this investigative officer did not prefer the threat charge [8]; rather, by assignment, he was directed to determine whether the facts were supportive of the charge and to recommend disposition. Examining his actions, we cannot find, as a matter of fact or law, that the Article 32 investigating officer manifested a lack of impartiality or that either investigation was improperly conducted.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge (concurring in part/dissenting in part):

I disagree with the standard set out in the principal opinion as the basis for determining the disqualification of the staff judge advocate to participate in the post-trial review required by Article 61, Uniform Code of Military Justice, 10 U.S.C. § 861, when his earlier action on the pretrial advice, required by Article 34, UCMJ, 10

---

5. A.B.A. Standards, The Function of Trial Judge § 5.4 (1972.)

6. *Id.* at § 6.3.

7. Article 32(a), UCMJ, 10 U.S.C. § 832(a).

8. Communication of a threat, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

U.S.C. § 834, has been challenged at trial by the accused. My opinion is that the test of disqualification is as stated in *United States v. Engle,* 1 M.J. 387 (C.M.A.1976). In other respects, I agree with the Court's disposition of the issue.

As to the disqualification of the Article 32 investigating officer to conduct the hearing on the threat offense, I believe the proper guideline is not to be found in the contempt power, but in the grounds of disqualification provided by the Uniform Code for a military judge, specifically, Article 26(d), UCMJ, 10 U.S.C. § 826(d), and in the grounds of challenge for participants in courts-martial proceedings in the Manual for Courts-Martial, United States, 1969 (Revised edition). One of the enumerated statutory grounds of disqualification is that the judge had previously "acted as investigating officer . . . in the same case." While Article 26, by its terms, applies to a military judge, I believe the specified grounds of disqualification can properly be applied to the Article 32 investigating officer, who, like a trial judge, is by law required to be "impartial." Here, the investigating officer had made some inquiry into the matter, but that was incident to the proper conduct of the proceedings he was conducting, and I do not believe he acted as an investigating officer as to the threat offense, within the meaning of Article 26. *See United States v. Lee,* 1 U.S.C.M.A. 212, 2 C.M.R. 118 (1952). However, I am troubled by the investigating officer's declaration as to the credibility of the hearing reporter. It is so expressive of a fixed opinion as to leave me insufficiently assured that it would later "easily yield to the evidence." *United States v. Deain,* 5 U.S.C. M.A. 44, 49, 17 C.M.R. 44, 49 (1954). *See* paras. 62*f*(10) and (13), Manual, *supra.* I conclude, therefore, that the accused's motion for a new investigation of the threat charge should have been granted.

I would reverse the decision of the United States Air Force Court of Military Review as to the Additional Charge and the sentence, and return the record of trial to it to determine, in its discretion, whether to order a rehearing as to that offense and the sentence or to dismiss the charge and reassess the sentence on the basis of the remaining findings of guilty.